799 F.2d 517
 15 Collier Bankr.Cas.2d 1277, 14 Bankr.Ct.Dec. 1399
 In re The MINOCO GROUP OF COMPANIES, LTD., a Delaware Corporation,
The MINOCO GROUP OF COMPANIES, LTD., a Delaware Corporation
and Minoco Southern Corporation, a Nevada
Corporation, Plaintiffs/Appellees,
v.
FIRST STATE UNDERWRITERS AGENCY OF NEW ENGLAND REINSURANCE
CORPORATION, and First State Insurance Company,
Defendants/Appellants.
 No. 84-6592.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 4, 1985.
Decided Sept. 9, 1986.
 
 Thomas Walper, Stroock, Stroock & Lavan, Los Angeles, Cal., for plaintiffs/appellees.
 Erwin E. Adler, Richards, Watson, Dreyfuss & Gershon, Los Angeles, Cal., for defendants/appellants.
 Appeal from the United States District Court for the Central District of California.
 Before ANDERSON and NORRIS, Circuit Judges, and COPPLE, District judge*
 NORRIS, Circuit Judge:
 
 
 1
 Appellants First State Underwriters Agency of New England and First State Insurance Company (collectively, "First State") are affiliated insurance companies that issued prepaid excess officers and directors liability policies to The Minoco Group of Companies ("Minoco"). The policies provided coverage only for "claims made" from November 24, 1982, through July 1, 1984, but permitted either party to cancel the policies at any time upon thirty days' notice. In November 1983, two months after Minoco filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (the "Code"), 11 U.S.C. Secs. 1101-1174 (1982), First State gave Minoco notice of cancellation of the policies. Minoco then brought this action in bankruptcy court seeking a declaratory judgment that cancellation of the policies was automatically stayed by section 362(a) of the Code, as well as an injunction prohibiting First State from cancelling the policies.
 
 
 2
 After an evidentiary hearing, the bankruptcy court made a finding of fact that if First State were permitted to cancel the policies, Minoco would be required to indemnify present and former officers and directors for legal expenses and judgments which arise from their activities as officers and directors.[1] The bankruptcy court also found that cancellation of the policies would render reorganization of Minoco more difficult, if not impossible, for two reasons: (a) the difficulty of attracting and retaining competent personnel to serve as officers and directors, and (b) the increase in claims against the debtor's estate resulting from claims for indemnification by present and former officers and directors. On the basis of these findings, the bankruptcy court declared that cancellation of the policies was automatically stayed by section 362(a) and enjoined First State from effecting a cancellation. The district court affirmed. Exercising jurisdiction under 28 U.S.C. Sec. 158(d), we affirm on the ground that the filing of the bankruptcy petition automatically stayed cancellation of the policies under section 362(a)(3) of the Code.
 
 
 3
 Section 362(a)(3) provides that the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." "Property of the estate" is defined in section 541(a) of the Code as "all legal or equitable interests of the debtor in property as of the commencement of the case." The legislative history makes it plain that "[t]he scope of this paragraph [section 541(a) ] is broad. It includes all kinds of property, including tangible or intangible property...." S. Rep. No. 95-989, 95th Cong., 1st Sess. 82 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5868. In In re Bialac, 712 F.2d 426 (9th Cir.1983) we said that section 541(a)'s definition of property "was intended to be broad and all-inclusive," id. at 430, and "an interest is not outside its reach because it is novel or contingent or enjoyment must be postponed." Id. at 431 (quoting Segal v. Rochelle, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966)).
 
 
 4
 First State argues on appeal that the excess officers and directors liability policies are not "property of the estate" within the meaning of section 541(a) because the policies benefit only the officers and directors, not Minoco. We disagree. As the bankruptcy court found,[2] the policies also benefit Minoco because the policies insure Minoco against indemnity claims made by officers and directors. Moreover, First State's position is contrary to the case law. For example, in A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir.1986), the Fourth Circuit held that a products liability policy issued to the debtor was "property of the estate" within the meaning of section 541(a). The Fourth Circuit stated:
 
 
 5
 Under the weight of authority, insurance contracts have been said to be embraced in this statutory definition of "property." In re Davis, 730 F.2d 176, 184 (5th Cir.1984). For example, even the right to cancel an insurance policy issued to the debtor has uniformly been held to be stayed under section 362(a)(3). Lam, Cancellation of Insurance: Bankruptcy Automatic Stay Implications, 59 Am.Bankr.L.J. 267 (1985) (extensively reviewing the cases to this effect). A products liability policy of the debtor is similarly within the principle: it is a valuable property of the debtor, particularly if the debtor is confronted with substantial liability claims within the coverage of the policy in which case the policy may well be, as one court has remarked in a case like the one under review, "the most important asset of [the debtor's] estate," In re Johns Manville Corp., 40 B.R. 219, 229 (S.D.N.Y.1984).
 
 
 6
 Id. at 1001.
 
 
 7
 The reasoning of the Fourth Circuit in A.H. Robins applies to this case with full force. For the purposes of the automatic stay, we see no significant distinction between a liability policy that insures the debtor against claims by consumers and one that insures the debtor against claims by officers and directors. In either case, the insurance policies protect against diminution of the value of the estate. As the Fourth Circuit understood, liability policies meet the fundamental test of whether they are "property of the estate" because the debtor's estate is worth more with them than without them. See Jackson, Translating Assets and Liabilities to the Bankruptcy Forum, 14 J.Legal Stud. 73, 99 (1985). Accordingly, cancellation of the insurance policies by First State was automatically stayed by section 362(a)(3).
 
 
 8
 We reject First State's contention that this case is governed, not by section 541(a), but by section 541(b). Under subsection (b), property held by the debtor solely for the benefit of another does not constitute property of the estate. The legislative history to subsection (b) manifests Congressional concern that funds which the debtor holds in constructive trust for another should not be parceled out among the creditors:
 
 
 9
 Situations occasionally arise where property ostensibly belonging to the debtor will actually be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in constructive trust for the person to whom the bill was owed.
 
 
 10
 H.R.Rep. No. 595, 95th Cong., 2d Sess. 368 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6324. Liability policies, however, are not held in constructive trust by the insured for the benefit of potential claimants; they are held by the insured as protection against claims that may be asserted against the insured. It is conceivable that at some point Minoco would receive money from First State for payment to officers and directors in satisfaction of indemnification claims, in which event section 541(b) might come into play. But that question is not before us in this appeal.[3]
 
 
 11
 First State contends that Minoco never demonstrated irreparable harm from cancellation. This point is meritless. The automatic stay comes into play upon the filing of a bankruptcy petition whether or not the debtor would suffer irreparable harm in the absence of the stay. First State also makes myriad assertions concerning Minoco's unstable corporate management and alleged misrepresentations by Minoco's officers and directors. While these assertions might have supported a demonstration of "cause" for relief from the stay under section 362(d), First State never submitted a motion in bankruptcy court for relief from the stay and does not argue on appeal that it was entitled to such relief. Although First State's assertions may stand as monuments to a missed opportunity, they are irrelevant to our decision in this case: that cancellation of liability insurance policies is automatically stayed by section 362(a).
 
 
 12
 AFFIRMED.
 
 
 
 *
 Honorable William P. Copple, United States District Judge, District of Arizona, sitting by designation
 
 
 [1]
 The insuring clause of the policies provides as follows:
 First State Insurance Company, in consideration of the payment of the premium and in reliance upon the statements in the application made a part hereof and subject to all of the terms, conditions, and exclusions of this policy, agrees:
 (a) with the Directors and Officers of the Company that, if during the policy period any claim or claims are made against the Directors and Officers for a Wrongful Act, the Insurers shall pay on behalf of such Directors and Officers all loss which such Directors and Officers shall become legally obligated to pay, except for such loss which the Company shall indemnify the Directors or Officers;
 (b) with the Company that, if during the policy period any claim or claims are made against the Directors or Officers of the Company for a Wrongful Act, the Insurers shall pay on behalf of the Company, all loss for which the Company may be required or permitted by law to indemnify the Directors or Officers.
 
 
 [2]
 First State does not challenge on appeal the bankruptcy court's findings of fact
 
 
 [3]
 First State's reliance on In re Marine Distributors, Inc., 522 F.2d 791 (9th Cir.1975), is misplaced. In that case, our circuit held that the bankruptcy court could not enjoin a bank from discharging its obligation under a letter of credit issued to a creditor of the debtor. Thus Marine Distributors is merely authority for the proposition that the bank's binding promise to the party who receives the letter of credit cannot be rendered nonbinding by the bankruptcy of the debtor. Moreover, Marine Distributors is inapposite because letters of credit are independent contractual obligations requiring the issuing institution to pay a third party. See In re Page, 18 B.R. 713, 715 (Bankr.D.D.C.1982); Baird, Standby Letters of Credit in Bankruptcy, 49 U.Chi.L.Rev. 130, 130 (1982). Liability insurance policies, by contrast, are not independent contractual obligations running directly to potential claimants; rather, they are direct obligations to the insured