**FEDERAL INSURANCE COMPANY,**
Plaintiff,

v.

**Donald T. SHELDON, Mary Schad and Don L. Horwitz, Trustee for the Liquidation of Donald Sheldon & Co., Inc.,** Defendants.

No. 90 Civ. 2256 (PKL).

United States District Court,
S.D. New York.

April 4, 1994.

See also, 153 B.R. 661.

Kaye, Scholer, Fierman, Hays & Handler (Jay G. Strum, John W. Schryber, David S. Pegno, Michael J. Gergen, of counsel), New York City, for defendant Don L. Horwitz.

Wilson Elser Moskowitz Edelman & Dicker (Glen Feinberg, Nina Cangiano, Mark G. Ledwin, of counsel), New York City, for plaintiff Federal Ins. Co.

### OPINION AND ORDER

LEISURE, District Judge.

This is a declaratory judgment action. Defendant Don L. Horwitz (the "Trustee"), trustee for the liquidation of Donald Sheldon & Co., Inc. ("DSCO" or the "Debtor"), previously commenced an adversary proceeding in bankruptcy court against Donald T. Sheldon, DSCO's former President and Chairman, and others, alleging that they were responsible for losses in excess of $14 million that ensued from the Debtor's failure. Defendants Sheldon and Mary Schad were found liable to the trustee, as a representative of the debtor, in an adversary proceeding in the bankruptcy court, and the Trustee has obtained money judgments against them. Federal Insurance Company ("Federal") filed the instant action seeking a declaration that the parties who have been found liable to the Trustee, namely Sheldon and Schad, are not entitled to coverage under a $10 million directors and officers insurance policy (the "D & O Policy") purchased from Federal by Debtor. The Trustee now moves this Court for an Order referring this action to the United States Bankruptcy Court for the Southern District of New York. For the following reasons, the motion is hereby granted.

## BACKGROUND

DSCO was a broker/dealer of securities. On July 30, 1985, this Court granted the Securities and Exchange Commission's (the "SEC") request for a temporary restraining order against DSCO and its agents and employees, restraining them from violating or aiding and abetting the violation of various securities laws. *See* Affirmation of David S. Pegno, Esq., sworn to on April 23, 1993 ("Pegno Aff."), at Exhibit A. The restraining order appointed former United States Bankruptcy Judge Stanley T. Lesser as receiver of DSCO "until such time as the Securities Investor Protection Corporation ("SIPC") makes a determination whether to apply for a protective order appointing a trustee FOR [DSCO] ... and such trustee is appointed by this Court." Pegno Aff. at Exhibit A, p. 4. On August 5, 1985, SIPC applied for an order for relief under the Securities Investor Protection Act ("SIPA"), seeking the appointment of Judge Lesser as trustee for the liquidation of DSCO. On August 9, 1985, the Court granted SIPC's application. The Order appointing Judge Lesser trustee was made effective as of 4:00 p.m. on August 13, 1985. Additionally, the liquidation proceeding was removed from this Court to the United States Bankruptcy Court for the Southern District of New York, in accordance with section 78eee(b)(4) of SIPA. Upon Judge Lesser's death in February 1987, Don L. Horwitz succeeded Judge Lesser as Trustee. The liquidation proceeding is currently pending before the Honorable Francis G. Conrad, United States Bankruptcy Judge.

An administrative proceeding was held before Administrative Law Judge Max O. Regensteiner (the "ALJ") pursuant to various sections of the Securities Exchange Act of 1934 ("Exchange Act") and the SIPA. In an Initial Decision issued December 2, 1988, the ALJ found that Sheldon's behavior was at least "reckless in failing to investigate problems brought to his attention and to keep himself informed of the basic financial information concerning the companies in his group." Pegno Aff. at Exhibit D, p. 17. By

Order dated November 18, 1992, the SEC affirmed the ALJ's ruling, and barred Sheldon from ever associating with any broker, dealer or municipal securities dealer. *See* Memorandum of Law submitted in Opposition ("Opposition Mem.") at 5.

On October 13, 1989, based in part on the findings of the ALJ, and based on his own findings, the Trustee commenced an adversary proceeding against Sheldon in the bankruptcy court.[1] The Trustee's complaint alleges that Sheldon and Mary Schad breached their fiduciary and contractual duties to the Debtor by permitting the unlawful conduct that gave rise to violations of the securities laws, as recited in the restraining order. The liability issues in that action were tried before a jury in the bankruptcy court; the trial commenced July 9, 1992. On July 24, 1992, the jury returned a verdict in the Trustee's favor finding both Sheldon and Schad liable. A separate proceeding was held to determine damages due from Sheldon, in which the jury returned a verdict in favor of the Trustee for $9,441,620. Pegno Aff. at Exhibit H. Sheldon's total liability to the Trustee exceeds $16 million. *Id.* at Exhibit I.

A bench trial to determine damages due from Schad was scheduled to commence on May 19, 1993. However, on May 14, 1993 defendant Schad filed a petition under Chapter 11 of the Bankruptcy Code. Accordingly, this action and the adversary proceeding were automatically stayed pursuant to § 362(a) of the Bankruptcy Code. Reply Memorandum submitted in support of Trustee's Motion to Refer ("Reply Mem.") at 1 n. 1; *see* Pegno Reply Affirmation sworn to on May 28, 1993 ("Pegno Reply") at Exhibit A. Subsequently, on October 28, 1993 by Stipulation and Order, and for good cause shown, the automatic stay was lifted with respect to this proceeding and the adversary proceeding. Stipulation and Order, *In re Mary Schad,* No. 93–21760 (JFK) (W.D.Pa.), filed October 28, 1993. Subsequent to the lifting of the stay, Schad did not appear to contest

1. Schad was not originally named in the action, but was added in November of 1990. *See* Pegno Aff. at Exhibit F.

the issue of damages. Accordingly, on February 27, 1994, Judge Conrad entered a judgment of $16,048,582 against Schad.

*The D & O Policy*

On September 23, 1982, Federal issued DSCO the indemnification policy at issue. *See* Pegno Aff. at Exhibit J. The D & O Policy insured DSCO's directors and officers against liability incurred as a result of a "Wrongful Act," which is defined to include a breach of a duty owed by the officer or director, subject to certain exclusions.[2] Pegno Aff. at Exhibit J. The policy afforded coverage for claims asserted against the insured during the policy period and for claims brought after the termination of the policy period, provided that the conduct underlying the claim occurred and was reported to Federal during the policy period. The loss limit on the policy was set at $10 million.

Six months after the commencement of the Trustee's action against Sheldon, Federal filed this declaratory judgment action against Sheldon in this Court seeking a determination that the D & O policy does not provide coverage for the Trustee's claims. Federal also alleged that it did not receive timely notice of the material facts and circumstances giving rise to the potential claim against Sheldon, and that it had cancelled the policy. On June 15, 1990, Sheldon filed an answer to Federal's complaint as well as a third-party complaint against the Trustee, asserting that any failure to provide Federal with proper notice was the fault of the Trustee.

The Trustee then moved for summary judgment with regard to Sheldon's third-party complaint and Federal's first claim for relief, the claim contending Federal did not receive timely notice. In an Opinion and Order dated February 4, 1993, this Court granted the Trustee's motion dismissing Federal's first claim for relief, dismissed Sheldon's third-party complaint, and granted

Federal's motion for leave to amend the complaint allowing Federal to name the Trustee and Schad as defendants. *See Federal Ins. Co. v. Sheldon*, 150 B.R. 314, 322–23 (S.D.N.Y.1993) (Leisure, J.). Federal filed its amended complaint on February 9, 1993. *See* Pegno Aff. at Exhibit Q.

The amended complaint contends that the D & O policy does not provide coverage for the trustee's claims against Sheldon and Schad, based upon the exclusions contained in the policy. Federal also contends that the aforementioned decision by the ALJ and the jury verdict, constitute a final adjudication on the issue of whether Sheldon and Schad's conduct precludes them from recovering under the D & O policy. Pegno Aff. at Exhibit Q. On April 1, 1993, the Trustee filed an answer to federal's amended complaint and interposed five (5) counterclaims against Federal: (1) tortious breach of the implied covenant of fair dealing; (2) violation of the New York General Business Law § 349; (3) breach of contract; (4) direct action pursuant to New York Insurance law § 3420; and (5) an accounting of all amounts that plaintiff has charged against the $10 million loss limit of the D & O policy.

On May 28, 1993 the Trustee brought the instant motion, pursuant to 28 U.S.C. § 157, for an Order of this Court, referring this action to the United States Bankruptcy Court for the Southern District of New York.

## DISCUSSION

### I. Automatic Reference to Bankruptcy Court

■ The statutory authority for the Trustee's motion is found in 28 U.S.C. § 157(a), which states in relevant part that: each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related

2. The D & O policy excludes from coverage liabilities:

(i) "brought about or contributed to by the dishonesty of such Insured Person if a judgment or other final adjudication adverse to such Insured Person establishes that acts of active and deliberate dishonesty were committed or attempted by such insured Person with

actual dishonest purpose and intent and were material to the cause of action so adjudicated," or

(ii) "based upon or attributed to such insured person having gained any personal profit or advantage to which he was legally not entitled."

Pegno Aff. at Exhibit J, section 3.2(D), (E).

to a case under title 11 shall be referred to the bankruptcy judges for the district. This statute was implemented in this District by a General Reference Order issued by Acting Chief Judge Robert J. Ward of the United States District Court for the Southern District of New York, on July 10, 1984. Judge Ward's Order states that: pursuant to Section 157(a) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 are referred to the bankruptcy judges for this District.

Title 28 U.S.C. § 157 also delineates the jurisdiction of the bankruptcy court. Under Section 157(b)(1) bankruptcy judges can enter orders and judgments in "core proceedings," as defined in Section 157(b)(2)(A)–(O). A bankruptcy judge can only hear a non-core matter if it is related to a case under title 11, and must submit proposed findings of fact and conclusions of law for final order or judgment of the district court. See 28 U.S.C. § 157(c)(1). Thus, whether a matter can be referred to a bankruptcy judge under Section 157(a) and whether the matter is within the jurisdiction of the bankruptcy court involve the same inquiry: core proceedings and non-core proceedings that are related to title 11 proceedings are within the jurisdiction of the bankruptcy court and can be referred to the bankruptcy judge.

Pursuant to the Order of then Acting Chief Judge Ward, the referral to the bankruptcy court is automatic if the action falls within the terms of the General Reference Order and if the bankruptcy court has jurisdiction over the matter. See Pan Am World Airways, Inc. v. Evergreen Int'l Airlines, Inc., 132 B.R. 4, 7 (S.D.N.Y.1991) ("[A]ll proceedings arising under title 11 or arising in or related to a case under title 11 are referred to the bankruptcy judges for this district."); Alliance Communications Group, Inc. v. Northern Telecom, Inc., 65 B.R. 581, 585

(S.D.N.Y.1986) ("Referral to the bankruptcy court ... is immediate and automatic"); see also Citibank, N.A. v. Park–Kenilworth Indus., Inc., 109 B.R. 321 (N.D.Ill.1989) (transfer to bankruptcy court under local rule is mandatory if suit is core or non-core and otherwise related to title 11 case). Therefore, it is incumbent upon this Court to determine whether this action arises in or relates to the DSCO liquidation, thus requiring referral to the bankruptcy court.

## II. Relation to the DSCO Liquidation

■ The jurisdictional test applied to this determination is quite broad. See In re Titan Energy Inc., 837 F.2d 325, 329–30 (8th Cir.1988). This Court has held that "[a] proceeding is related to a bankruptcy case if the outcome could conceivably have any effect on the estate being administered in bankruptcy." Horwitz v. Sheldon, No. 92 Civ. 6834 (JSM), 1992 WL 396885, *3 n. 3 (S.D.N.Y. Dec. 17, 1992) (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984)) [3]; See In re Titan, 837 F.2d at 329–30.

■ Federal argues that since the policy at issue covers the directors and not the company, the policy is not part of the estate and accordingly, the outcome of the instant action is not related to the bankruptcy proceeding. See Opposition Mem. at 13–16 (citing In re Louisiana World Exposition, Inc., 832 F.2d at 1399) (finding proceeds of liability insurance purchased on behalf of directors were not part of the estate). Federal's argument however, is unpersuasive. The question presented herein, is whether the determination of insurance coverage could conceivably have any effect on the estate being administered in bankruptcy.

■ In general, courts have held that insurance coverage disputes that affect the amount of property in an estate constitute related proceedings. See In re Amatex Corp., 107 B.R. 856, 863 (E.D.Pa.1989), aff'd,

---

3. The Pacor court articulated the test for determining whether a civil proceeding is related to bankruptcy as follows:

whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy (citations omitted).... An action is related to bankruptcy if

the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Pacor, Inc. v. Higgins, 743 F.2d at 994.

908 F.2d 961 (3d Cir.1990) (action brought by trustee against insurance company seeking recovery from the policy); *Matter of Pied Piper Casuals, Inc.*, 65 B.R. 780, 781 (S.D.N.Y.1986) (action seeking reimbursement under insurance policy for losses due to theft determined to be related). *See In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir.1987) (collecting cases holding that proceeds from debtor's liability insurance are part of debtor's estate (citing *Tringali v. Hathaway Machinery Co.*, 796 F.2d 553, 560–61 (1st Cir.1986) and *Holland America Insurance Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir.1985) (any right to proceeds from debtor's fire insurance belonged initially to debtor even where policy was owned by both corporate and individual owner))). Additionally, "[t]here are a great many bankruptcy cases holding that liability insurance policies that provide coverage for the bankrupt's liability belong to the bankrupt's estate." *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987) (collecting cases).

Furthermore, circuit courts have held that insurance policies which provided liability coverage to officers and directors can not only be considered related to the bankruptcy proceeding, but actually constituted " 'property of the estate' within the meaning of [11 U.S.C.] section 541(a)". *In re Minoco Group of Companies, Ltd.*, 799 F.2d 517, 519 (9th Cir.1986). In *Minoco* the Ninth Circuit reasoned that the insurance would protect the company from potential indemnity claims from the officers and directors, and thus the policies were property of the estate because the debtor's estate was worth more with them than without them. *Id. See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.1986) (holding that "[u]nder the weight of authority, insurance contracts have been said to be embraced in [the] statutory definition of 'property' " pursuant to section 541(a)(1) of the Bankruptcy Act).

The Trustee contends that the action is related to the DSCO liquidation proceedings in the bankruptcy court because the resolution of this action will affect the amount of property in the estate, the Trustee has a clear interest in the D & O policy, and the Trustee's counterclaims are property of the estate. Accordingly, the Trustee contends that this action should be referred to the bankruptcy court. This Court agrees.

The only question this Court need address is whether the determination of the coverage provided by the D & O policy could conceivably have any effect on the estate being administered in bankruptcy. This Court finds that this action is related to the liquidation proceeding presently before Judge Conrad.

As discussed above the estate is a judgment creditor. Sheldon and Schad's liability to the estate each exceed $16 million. If there is a determination that the D & O insurance policy does in fact cover Sheldon and Schad's liability, then the insurance proceeds will pay a substantial portion of their liability to the estate, which would otherwise remain unsatisfied. As the Eighth Circuit has held, "even a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test articulated in *Pacor*." *In re Titan*, 837 F.2d at 330 (finding bankruptcy court had related jurisdiction of declaratory judgment action brought to determine scope of insurance policy, since proceeding determining extent of coverage could impact on debtor's estate). Here, the resolution of this action will affect the DSCO liquidation, since the proceeds of the D & O policy paid to Sheldon and Schad, if any, would become payable to the Trustee. Accordingly, the Trustee has a clear interest in the outcome of this action. Since the outcome of this proceeding obviously will have some effect on the bankrupt's estate, this Court finds the trustee's argument that this proceeding is within the bankruptcy court's "related to" jurisdiction to be persuasive. *See B–U Acquisition Group, Inc. v. Utica Mut. Ins. Co.*, 52 B.R. 541, 547–48 & n. 4 (Bankr. S.D.Ohio 1985).

Even if this Court were to find the Trustee's first argument to be unpersuasive, this action would still be referred to the bankruptcy court under the mandatory terms of the General Reference Order, as related to a proceeding under title 11. Related proceedings include "causes of action owned by the debtor that became property of the es-

tate under section 541." 1 King, Collier on Bankruptcy ¶ 3.01[1][b][iv]. *See Pan Am World Airways*, 132 B.R. at 8 (S.D.N.Y. 1991). As addressed above, the Trustee has asserted five (5) counterclaims against Federal, including one cause of action for payment of policy proceeds brought under New York State Insurance Law § 3420, which provides that in the case where a judgment against an insured remains unsatisfied for more than 30 days, an action may be maintained against the insurer. *See* N.Y. Ins. Law § 3420(a). The Trustee's causes of action are therefore related to the liquidation, a case under title 11, and must be referred to the bankruptcy court. *See Pan Am World Airways*, 132 B.R. at 8.

### III. Judicial Economy

■ In properly determining when bankruptcy courts should exercise jurisdiction over a proceeding as opposed to district courts, courts have sought to avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected with the debtor's estate. *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 787 (11th Cir.1990) (citing *In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988)). When the interests of judicial economy weigh in favor of the bankruptcy court hearing a matter, the District Court should consider this factor in deciding whether to refer the proceeding to the bankruptcy court.[4] *See In re Kenai Corp.*, 136 B.R. 59, 61 (S.D.N.Y.1992); *Unique Catering Inc. v. American Broadcasting Companies, Inc.*, 49 B.R. 367 (S.D.N.Y.1985).

■ In the instant action the interests of judicial economy clearly militate in favor of the bankruptcy court hearing this matter. As discussed above, the bankruptcy court held a two-week jury trial to determine the liability of Sheldon and Schad, and subsequently held a trial to assess damages. Accordingly, the bankruptcy court is fully familiar with the facts underlying this dispute.

Judge Conrad is in a better position than this Court to assess the issues involving the insurance policy and the extent of its coverage. This Court's involvement with this case has been limited to the disposition of one motion, and, accordingly, this Court is not as well positioned as the bankruptcy court to undertake this action. Since it would be an obvious waste of judicial resources for two courts to preside over this matter it is the more prudent course to refer this action to the bankruptcy court.

■ Finally, Federal contends that "it makes no sense to refer the matter to [Judge Conrad] when this Court will be required to conduct a *de novo* review of Judge Conrad's proposed findings of fact and conclusions of law." Opposition Mem. at 18–19. That the bankruptcy judge may have to submit proposed findings of fact and conclusions of law if he determines that the case is non-core but related to the title 11 case does not prevent referral of the action to the bankruptcy court.[5] As discussed above, reference of non-core cases related to title 11 proceedings is automatic. The fact that the bankruptcy judge can only issue proposed findings and conclusions "is irrelevant to the question of referral." *Alliance Communications Group*, 65 B.R. at 585.

### CONCLUSION

For the foregoing reasons, the motion of defendant Don L. Horwitz, Trustee for the Liquidation of Donald Sheldon & Co., Inc., for an Order of this Court referring this action to the bankruptcy court is hereby granted.

**SO ORDERED.**

---

4. It should be noted that judicial economy in and of itself is not sufficient to justify jurisdiction. *See In re Lemco Gypsum, Inc.*, 910 F.2d at 789; *Pacor, Inc. v. Higgins*, 743 F.2d at 994.

5. The determination whether a case is a core proceeding or a non-core matter related to a case under title 11 is made by the bankruptcy judge. *See* 28 U.S.C. § 157(b)(3).