**AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO., et al., Plaintiffs,**

v.

**TOWERS FINANCIAL CORPORATION et al., Defendants.**

**94 Civ. 2727 (WK) (AJP).**

United States District Court, S.D. New York.

May 31, 1996.

John J. Patterson, D'Amato & Lynch, New York City, for plaintiffs.

Bill Boyd, Boyd Veigel, McKinney, TX, for defendants.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, Senior District Judge.

Before us is Magistrate Judge Peck's Report and Recommendation recommending that we deny the motion of Ben Barnes ("defendant"), a Towers' director, to dismiss the Amended Complaint of American International Specialty Lines Insurance Company and National Union Fire Insurance Company ("plaintiffs" or "the insurers") against the Towers Financial Corporation and individual directors thereof. For the reasons that follow, we adopt the Report and Recommendation in its entirety.

## BACKGROUND

The Magistrate Judge describes the facts underlying this action. *See* Report and Recommendation at pp. 2–6. For our purposes, then, the facts briefly are as follows:

The insurers brought the complaint as a "non-core" action, related to the Towers bankruptcy proceeding. They seek a declaratory judgment that the "Directors and Officers Insurance and Company Reimbursement Policies" ("the policies") issued by plaintiffs to Towers[1] were cancelled for nonpayment of premium before notice of claim such that there is no coverage for the underlying lawsuits;[2] or alternatively, that the policies are null and void from inception or that the underlying lawsuits are excluded from coverage by virtue of policy exclusions. In other words, plaintiffs are seeking a declaratory judgment that they are not going to have to indemnify the individual directors and officers of Towers for whatever damages result from the underlying lawsuits.

Ben Barnes is one of the Towers directors named individually in the instant action. He has moved to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy and Rule 12(b)(1) of the Federal Rules of Civil Procedure.

The Magistrate Judge, in a characteristically careful and thorough Report and Recommendation, finds that the plaintiffs' action is "related to" the Towers bankruptcy proceeding and therefore recommends that we deny defendant's motion to dismiss.

Defendant has filed objections to the Magistrate Judge's Report and Recommendation, which, after consideration, we reject.

## DISCUSSION

■ The Magistrate Judge found that plaintiffs' action is "related to" the Towers bankruptcy proceeding because the outcome of this action—*ie* the declaratory judgment that the insurance policies either cover the underlying lawsuits, or do not cover the underlying lawsuits—could conceivably have an effect on the Towers estate being administered in bankruptcy, which is how New York law defines "relate to." *See* Report and Recommendation at pp. 6–7.

It could have such an effect for two reasons. First, if the court were to determine that the policies cover any indemnity claims by Towers officers and directors, that holding would reduce the total amount of damage claims that could be lodged against the estate. If, on the other hand, the court were to find coverage lacking, the directors and officers seeking indemnity would join the other general creditors seeking to be paid, and each creditor would receive a "smaller share of the Towers' pie." Report and Recommendation at p. 11. Second, the plaintiff insurers seek—as an alternative to a declaratory judgment that their policies don't cover the claims in the underlying lawsuits—rescission of those policies. If plaintiffs prevail, Towers would receive refunds of its insurance premiums for four years. Thus, rescission could provide over $1 million to the Towers bankruptcy estate.

It is difficult to imagine how a case could be more "related to" the Towers bankruptcy than this one.

The defendant doesn't agree. He appears to argue two things in opposition to the Magistrate Judge's finding. He argues first that the insurers have failed to allege that a "loss" has occurred as defined in the policies, and thus the action cannot have an effect on the Towers estate. By this, we understand him to mean that without an allegation that a "loss" has actually occurred, there is no "case or controversy." Second, defendant challenges the Magistrate Judge's finding that this action, if successful, could provide substantial sums of money to the Towers bank-

---

1. These policies provided $5 million of coverage (including coverage of defense costs) and required Towers to pay a premium of $295,000. They provided coverage both to Towers and to Towers' directors and officers for loss arising from claims against Towers or the directors. *See* Report and Recommendation at pp. 5–6.

2. The underlying lawsuits consist of the Towers litigation presently before us and Magistrate Judge Peck: *ie SEC v. Towers* 93 Civ. 0744, the Noteholder class action of *In re Towers* 93 civ. 0810; *Shawmut Bank v. Towers* 93 Civ. 1080; and *Bank of Cape Verde v. Towers* 93 Civ. 1686.

ruptcy estate. For these reasons, he urges us to reject the Magistrate Judge's recommendation and grant his motion to dismiss for lack of subject matter jurisdiction.

As to the first argument, the underlying lawsuits were brought against individual defendants, and certain of them purported to give notice thereof under the relevant insurance policy, thus potentially triggering coverage obligations. The insurers did not agree that coverage existed and believed the policies to be null and void, so they brought the instant action seeking a clarification of their rights and obligations. As the Magistrate Judge notes, at p. 12 of the Report and Recommendation, "there clearly is a live controversy as between the plaintiffs and those defendants [seeking indemnity under the policies]."

Nor can it be said that the dispute with the individuals concerning the validity of the policies cannot have an effect on the Towers estate. There is indeed an effect: if the policies are upheld, it might relieve the Towers estate of claims which might otherwise burden it and thus affect the distribution to other creditors. In addition, the policies might also insure Towers itself to the extent Towers might be required to indemnify its officers and directors. Defendant argues that the insurers have not alleged that any such claims have been made against the estate. But as the Magistrate Judge observed, there can be no assurance that such claims will not be made. *See* Report and Recommendation at p. 10, n. 3. As such, there can really be no argument at this point that the outcome of the instant action will not have a "conceivable effect" on the Towers bankruptcy estate.

Defendant's argument that the rescission of the policies would not have a "conceivable effect" on the Towers estate is equally unpersuasive. If rescission is decreed, there is no doubt that substantial sums are involved. Plaintiffs estimate, in fact, that reimbursement for premiums paid since 1989 may result in the Towers estate receiving over $500,000 for potential distribution to creditors. Again, it is hard to imagine a more "conceivable effect" on the estate.

For these reasons, we adopt the Magistrate Judge's Report and Recommendation in its entirety.

SO ORDERED.

## REPORT AND RECOMMENDATION

ANDREW J. PECK, United States Magistrate Judge.

Plaintiffs American International Specialty Lines Insurance Company ("American International" or "AISLIC") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), brought this adversary proceeding as a non-core action, related to Towers Financial Corporation's bankruptcy proceeding. Plaintiffs seek a declaratory judgment that the "Directors and Officers Insurance and Company Reimbursement ["D & O"] Policies" issued by plaintiffs to Towers was cancelled for nonpayment of premium before notice of claim such that there is no coverage for the "Underlying Lawsuits," or alternatively that the policies are null and void from inception or that the Underlying Lawsuits are excluded from coverage by virtue of policy exclusions. Plaintiff National Union also seeks a declaratory judgment that the "Employed Lawyers Professional Liability ["EPL"] Policies" issued by plaintiff to Towers covering "in-house lawyers" are null and void from inception. (The D & O and EPL Policies are collectively referred to as the "Policies.")

Presently before the Court is the motion of defendant Ben Barnes, a Towers' director (Amended Complaint [hereafter, "Cplt." or "complaint"] ¶ 19), to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(1) of the Federal Rules of Civil Procedure. None of the other defendants have joined Barnes' motion. For the reasons set forth below, I find that this action is "related to" the Towers' bankruptcy proceeding and therefore recommend that the Court deny defendant Barnes' motion to dismiss.

### FACTS

Plaintiffs brought this "action for a declaration of rights and related relief pursuant to 28 U.S.C. § 2201, et seq. and Fed.R.Civ.P.

57." (Cplt ¶ 1.) The complaint asserts that the "Court has jurisdiction pursuant to 28 U.S.C. Sections 157 and 1334 ..." and that this case "is a non-core [adversary] proceeding pursuant to 28 U.S.C. § 157." (Cplt. ¶¶ 2–3.) Thereafter, by consent order, the reference to the Bankruptcy Court was withdrawn under 28 U.S.C. § 157(d). (*See* Plfs' Brief at 2.)

Plaintiffs' action is brought against Towers and the following Towers officers and directors: Steven Hoffenberg, Mitchell Brater, Charles Chugerman, Michael Rosoff, Thomas B. Evans, Jr. and Ben Barnes. (Cplt. ¶¶ 13–20, 22.) The complaint alleges that "[c]ertain of the Individual Defendants have purported to give notice of the Underlying Litigations" (Cplt. ¶ 21)—that is, *SEC v. Towers,* 93 Civ. 0744; the Noteholder class action of *In re Towers,* 93 Civ. 0810; *Shawmut Bank v. Towers,* 93 Civ. 1080; and *Bank of Cape Verde v. Towers,* 93 Civ. 1686, all pending in the Southern District of New York. (Cplt. ¶ 35.)

The complaint alleges that a "dispute exists as to whether the cancellation of the AISLIC D & O Policy was effective, as to whether National Union and AISLIC are entitled to rescission [of the Policies], and as to whether coverage exists under the Policies for the Underlying Lawsuits. All of the directors and/or officers of Towers and Persons Insured under the EPL Policies named in the Underlying Lawsuits are also defendants herein." (Cplt. ¶ 28.)

The complaint seeks a declaratory judgment that AISLIC cancelled the D & O Policy for the policy period November 17, 1992 to November 17, 1993 on or about December 21, 1992, effective on or about January 20, 1993, for nonpayment of premium. Thus, because the policy was cancelled before AISLIC received notice of the Underlying Litigations from any insured, the complaint seeks a declaration that there is no coverage for the Underlying Lawsuits. (Cplt. ¶¶ 23, 30–37.)

The complaint alternatively seeks rescission of the AISLIC D & O Policy, and all of the prior D & O Policies issued by National Union, based upon material misrepresentations, failure to disclose true facts, and fraud

in connection with Towers' application for the original and renewal D & O Policies. (Cplt. ¶¶ 38–68.) The alleged fraud, misstatements and omissions involve many of the same allegations as are alleged in the *In re Towers* litigation. *See generally In re Towers Financial Corporation Noteholders Litigation,* 93 Civ. 0810, 1995 WL 571888 (S.D.N.Y. Sept. 20, 1995). The complaint also seeks a declaratory judgment that the Underlying Lawsuits are excluded from coverage under the D & O Policies because Towers and its officers or directors "had knowledge of acts, errors or omissions which could and did give rise to the allegations in the Underlying Lawsuits." (Cplt. ¶ 70.)

The complaint also seeks rescission of the EPL Policies based upon material misrepresentations, failure to disclose true facts and fraud. (Cplt. ¶¶ 71–92.)

Finally, the complaint states that plaintiffs "hereby tender to Towers—or its assignees as their interest may appear—such portion of the total premiums paid for the D & O [and EPL] Policies as they/it may be entitled to in the event rescission is granted as to one or more of the D & O [and EPL] Policies." (Cplt. ¶¶ 62, 65, 68, 85, 88, 92.)

■ While plaintiff did not attach any of the Policies to the complaint, defendant Barnes attached to his brief on this motion a copy of the AISLIC D & O Policy for the period of November 17, 1992 to November 17, 1993. Because the policy is referred to in and integral to the complaint, the Court may consider it on the motion to dismiss without converting the motion into a summary judgment motion. *E.g., JCD Int'l Gem Corp. v. Evanston Ins. Co.,* 94 Civ. 5315, 1995 WL 491337 at *6, n. 1 (S.D.N.Y. Aug. 17, 1995) (considering insurance policy on motion to dismiss because the policy was integral to the complaint); *see also* cases cited in *In re Towers,* 1995 WL 571888 at *11–12.

The D & O Policy provided $5 million of coverage (including coverage of defense costs) and required Towers to pay a premium of $295,000. (Policy at cover page.) The Policy provides coverage both to Towers and to Towers' directors and officers, as follows:

COVERAGE A: DIRECTORS AND OFFICERS INSURANCE

This policy shall pay the Loss of each and every Director or Officer of the Company arising from any claim or claims first made against the Directors or Officers and reported to the Insurer during the Policy Period or the Discovery Period (if applicable) for any alleged Wrongful Act in their respective capacities as Directors or Officers of the Company, except for and to the extent that the Company has indemnified the Directors or Officers. The Insurer shall, in accordance with and subject to Clause 9, advance to each and every Director and Officer the Defense Costs of such claim or claims prior to their final disposition.

COVERAGE B: COMPANY REIMBURSEMENT INSURANCE

This policy shall reimburse the Company for Loss arising from any claim or claims which are first made against the Directors or Officers and reported to the Insurer during the Policy Period or the Discovery Period (if applicable) for any alleged Wrongful Act in their respective capacities as Directors or Officers of the Company, but only when and to the extent that the Company has indemnified the Directors or Officers for such Loss pursuant to law, common or statutory, or contract, or the Charter or By-laws of the Company duly effective under such law which determines and defines such rights of indemnity.

(Policy at p. 1, ¶ 1.)

### ANALYSIS

The issue on this motion is whether this action is a "related" case to the Towers bankruptcy proceeding.

■ "[T]he district court shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); see also 28 U.S.C. § 157(c)(1) ("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11."). Neither Section 157 nor Section 1134 defines what is a "related" case, but the case law clearly does:

The standard test for determining whether a civil proceeding is related to a bankruptcy case is

> whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

In re Riverside Nursing Home, 144 B.R. 951, 955–56 (S.D.N.Y.1992) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (citations omitted)); see also In re Cuyahoga Equipment Corp., 980 F.2d 110, 114 (2d Cir.1992) (adopting Pacor's "conceivable effect" test).

■ The "Courts apply a liberal standard to determine whether a proceeding is related to a bankruptcy case." In re United States Lines, Inc., 169 B.R. 804, 815 (S.D.N.Y.1994) (citing, e.g., In re Cuyahoga Equipment Corp., 980 F.2d at 114). Thus, as the Second Circuit held in In re Cuyahoga Equipment Corp.:

> The test for determining whether litigation has a significant connection with a pending bankruptcy is whether its outcome might have any "conceivable effect" on the bankruptcy estate. If that question is answered affirmatively, the litigation falls within the "related to" jurisdiction of the bankruptcy court.

980 F.2d at 114. See also, e.g., In re Kolinsky, 100 B.R. 695, 702 (S.D.N.Y.1989) ("If a resolution of an action between nondebtors would affect the amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights or liabilities, such civil proceeding will be regarded as related to the bankruptcy case.").

This is not the first time that the courts have addressed the issue of "related to" jur-

isdiction in cases involving insurance policies of a debtor in bankruptcy.

In *In re Titan Energy, Inc.*, 837 F.2d 325 (8th Cir.1988), the insurer brought an action in bankruptcy court for declaratory and injunctive relief that an insurance policy it issued the debtor was void for misrepresentations. *Id.* at 326. The Eighth Circuit upheld the bankruptcy court's jurisdiction over the action:

> Though Titan's [the debtor's] interest in the policies is somewhat attenuated, they are the named insured and we hold that the policies are property of Titan's estate under the expansive definition set forth in section 541 of the Bankruptcy Code.

*Id.* at 328–29. The Court noted that the Ninth Circuit had "defined a debtor company's directors and officers liability policy as property of that debtor's estate because the estate 'is worth more with them than without them.'" *Id.* at 329 (*quoting In re Minoco Group of Companies, Ltd.*, 799 F.2d 517, 519 (9th Cir.1986)).[1] The Court pointed out that the "First, Fourth and Fifth Circuits have characterized a debtor's insurance policy as property of a debtor's estate as well." *Titan*, 837 F.2d at 329 (citing cases).

The Court explained how resolution of the insurance's validity would affect the debtor's estate:

> In the instant case, if the policies are held to cover the damage claims, that holding will reduce the total amount of damage claims lodged against the estate. If the court finds coverage lacking, then Butcher will join the general creditor queue, and each creditor will receive a smaller share of the Titan pie. Though the policy proceeds do not flow directly into the coffers of the estate, they do serve to reduce some

claims and permit more extensive distribution of available assets in the liquidation of the estate. Like the policies in *In re Minoco, supra*, the policies here are property of Titan's estate because the estate is worth more with them than without them.

*Id.* at 329. For the same reason, the Court found the insurance company's claims for rescission and declaratory relief to be "related" to the bankruptcy case:

> National Union further seeks rescission of the policies, and a declaratory judgment as to the extent of coverage. A proceeding to determine National Union's rights and obligations under the policies is "related to" Titan's title 11 case for purposes of jurisdiction if "the outcome * * * could conceivably have any effect on the estate being administered in bankruptcy." ... [E]ven a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test articulated in *Pacor*. For the reasons [quoted above], we determine that the resolution of [the insurance company's declaratory judgment claims for rescission] could conceivably have an impact on Titan's estate. Thus, we conclude that the bankruptcy court has jurisdiction to hear National Union's non-core, but related claims.

*Id.* at 329–30.[2]

Similarly, in *UNR Industries, Inc. v. Continental Casualty Co.*, 942 F.2d 1101, 1103 (7th Cir.1991), the Court found jurisdiction existed as a "related" case "because this case concerns UNR's interest, if any, in insurance policies" and the "scope of UNR's interest 'affects the amount of property available for distribution.'" *Id.*[3] *See also, e.g., MacAr-*

---

1. The policies in *Minoco*, as here, protected not only the officers and directors but the company. The Ninth Circuit found that "the policies also benefit [the company as well as its officers and directors] because the policies insured [the company] against indemnity claims made by officers and directors." *Minoco*, 799 F.2d at 519.

2. After upholding the court's jurisdiction, the Eighth Circuit agreed that the bankruptcy court correctly abstained in favor of a prior state court action to collect on the policy. *Id.* at 330–34. Here, there is no state action pending and Barnes has not sought abstention.

3. *But cf. In re Zenith Laboratories, Inc.* 104 B.R. 659, 665–66 (D.N.J.1989), finding the company's D & O policy to be too contingent to be an asset of the estate where the policy covered the directors directly and the company only if it indemnified the directors, and under New Jersey state law, the debtor was "not unconditionally required to reimburse its officers and directors for legal expenses" or any judgment. Here, in contrast, Towers is a Delaware corporation (Cplt. ¶ 13) and Delaware law *requires* that a corporation reimburse directors and officers who successfully defend on the merits an action against

*thur Co. v. Johns–Manville Corp.*, 837 F.2d 89, 92 (2d Cir.) ("Numerous courts have determined that a debtor's insurance policies are property of the estate, subject to the bankruptcy court's jurisdiction."), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); *Federal Ins. Co. v. Sheldon*, 167 B.R. 15, 20 (S.D.N.Y.1994) (D & O policies are not only "related" to the bankruptcy proceeding but are "property of the estate," *citing Minoco* ); *In re U.S. Lines*, 169 B.R. at 819 (citing cases).

Here, as in *Titan* and *Minoco*, a proceeding to determine the plaintiff insurers' rights and obligations under the Policies could conceivably have an effect on Towers' bankruptcy estate. If the Court were to determine that the Policies cover any claims by Towers' officers and directors for indemnity, that holding would reduce the total amount of damage claims that could be lodged against the estate. If the Court were to find coverage lacking, then the directors and officers seeking indemnity would join the general creditors queue, and each creditor would receive a smaller share of the Towers' pie. Thus, even if the Policy proceeds do not flow directly into the estate's coffers, "they do serve to reduce some claims and permit more extensive distribution of available assets in the liquidation of the estate.... [T]he policies here are property of [Towers'] estate because the estate is worth more with them than without them." *Titan*, 837 F.2d at 329.

There is another reason this suit is "related" to the bankruptcy. The plaintiff insurers seek rescission of the Policies. If plaintiffs prevail, Towers' would receive refunds of its insurance premiums for four years of D & O and EPL Policies. (Cplt. ¶¶ 23–27.) The complaint does not detail all the years' premiums, but the D & O policy for November 17, 1992 to November 17, 1993 shows a $295,-000 premium. Thus, rescission could provide over $1 million to the Towers bankruptcy estate.

■ Barnes alleges that this is not a "related" case because:

It is difficult to understand how the outcome of this adversary proceeding could have any possible effect on the Towers bankruptcy proceeding. Although the insurance policies appear to protect Towers against indemnity claims that may be asserted against Towers by its officers and directors, it has not been alleged, much less shown, that any such claims have been made, or that any such claims constitute a "loss" as that term is defined under the policy. Furthermore, Plaintiffs have not alleged that Towers has made or intends to make any claim for reimbursement of any such indemnity claims under the terms of said policies ...

(Barnes' Brief at 5.) Essentially, Barnes is arguing that there is no "case or controversy" for a declaratory judgment. But for a case to be "related" to a bankruptcy action, the test is whether the outcome "could conceivably have any effect on the [debtor's] estate," *see* cases cited above, and this action meets that standard. Moreover, viewed in "traditional" (non-bankruptcy) declaratory judgment standards, while Towers' officers and directors are not alleged to have made a claim to Towers for indemnity, the complaint does allege that certain of the Individual Defendants here have given notice of claim to plaintiffs. (Cplt. ¶ 21.) Thus, there clearly is a live controversy as between plaintiffs and those defendants. Under New York law, "[i]n an action for rescission, all parties to the agreement must be joined as necessary parties," and thus a declaratory judgment action by plaintiffs must include Towers as well as the Individual Defendants. *Tudor v. Riposanu*, 93 A.D.2d 718, 719, 461 N.Y.S.2d 6, 7 (1st Dep't 1983); *see also, Bonoff v. Troy*, 187 A.D.2d 302, 304, 589 N.Y.S.2d 340, 341 (1st Dep't 1992).

■ Finally, defendant Barnes alleges that plaintiffs are not entitled to rescission because plaintiffs have not actually tendered the policy premiums to Towers. (*See* Barnes' Reply Brief at 4–5.) Barnes relies upon *Berger v. Manhattan Life Ins. Co.*, 805

---

them as corporate officers. 8 Del.C. § 145(c); *MCI Telecommunications Corp. v. Wanzer*, C.A. Nos. 89 C–MR–216, 89C–SE–26, 1990 WL 91100 at *2–3 (Del.Sup. June 19, 1990) ("The language

of 145(c) clearly provides for, what has been referred to by the commentators as, mandatory indemnification."); *see also, e.g., Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 344 (Del.1983).

F.Supp. 1097 (S.D.N.Y.1992). Barnes' reliance is misplaced. Plaintiffs in their complaint have offered to tender the premiums. (Cplt. ¶¶ 62, 65, 68, 85, 88, 92.) At this stage of the litigation, that is sufficient. As *Berger* held, under New York law, where an insurer seeks to rescind a policy for fraud or other grounds, "equity requires that the insurance company tender back the premium prior to trial" or a summary judgment motion, and the "offer of tender in a pleading cannot be considered the same as actual tender." *Berger*, 805 F.Supp. at 1110–12. Here, trial is a long way off and the current motion is not for summary judgment but a preliminary motion to dismiss. Plaintiffs were not required by *Berger* to tender the premiums at this early stage of the litigation. That is especially so here where rescission is an alternative ground for relief and plaintiffs' primary ground for relief is cancellation of the November 17, 1992 to November 17, 1993 policy for nonpayment of premiums.

### *CONCLUSION*

For the reasons set forth above, I find that this action is "related" to the Towers bankruptcy proceeding and therefore recommend that defendant Barnes' motion to dismiss be denied.

### *DISCOVERY*

As I previously advised counsel for plaintiffs and defendant Barnes during the February 5, 1996 telephone "oral argument" on the motion (and instructed them to advise all other counsel), the parties are to "meet and confer" and present a written discovery plan to the Court by February 29, 1996, including how discovery in this action will interplay with the "master" discovery plan in *In re Towers*, 93 Civ. 0810, 1995 WL 571888, and related cases.

### *SERVICE*

Copies of this Report and Recommendation are being mailed to plaintiffs' and defendant's liaison counsel in *In re Towers*, plaintiffs' counsel here and defendant Barnes' counsel. Defendant Barnes' counsel is to serve it on all other counsel of record in this action.

### *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

█ Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Whitman Knapp, 40 Centre Street, Room 1201, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Knapp. Failure to file objections may result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.), *cert. denied*, 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir.1983).

Dated: New York, New York
February 14, 1996