In re **PINTLAR CORPORATION** and Gulf U.S.A. Corporation, Debtors.

**PINTLAR CORPORATION** and Gulf U.S.A. Corporation, Plaintiffs,

v.

**THE FIDELITY AND CASUALTY COMPANY OF NEW YORK** and the Continental Insurance Company, Defendants.

Bankruptcy Nos. 93–02986, 93–02987. Adv. No. 94–6292.

United States Bankruptcy Court, D. Idaho.

Nov. 10, 1994.

John M. Friedman, Jr., Dewey Ballantine, New York City, and Terry L. Myers, Givens, Pursley & Huntley, Boise, ID, for debtors/plaintiffs.

Kim W. West, Arter & Hadden, Los Angeles, CA, and Robert J. Fasnacht, Wetzel & Fasnacht, Coeur d'Alene, ID, for defendants.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Bankruptcy Judge.

Gulf USA Corporation ("Gulf") and Pintlar Corporation ("Pintlar") (collectively referred to hereinafter as "debtors") filed this adversary proceeding against The Fidelity and Casualty Company of New York ("Fidelity") and Continental Insurance Company ("Continental") for violation of the 11 U.S.C. § 362 automatic stay. (Fidelity and Continental and hereinafter collectively referred to as the "Insurers.")

At issue presently is the debtors' motion for a preliminary injunction under 11 U.S.C. §§ 105 and 362, that, if granted, would enjoin further prosecution of the insurers' complaint for declaratory judgment.

1. The defendant former officers and directors are David J. Rowland, Jeremy E. James, David L. Hudd, Derek J. Moran, Robert G. Boulton, Sey-mour Graubard, Hans W. Wanders, Graham F.

## I.

### BACKGROUND

On October 18, 1993, involuntary petitions for relief under chapter 11 of Title 11 of the United States Code were filed against Gulf and Pintlar. The debtors subsequently stipulated to an order for relief under chapter 11.

Also on October 18, 1993, but prior to the filing of the involuntary petitions, the insurers issued primary insurance policies for officer and director liability and company reimbursement to Gulf and its subsidiaries, including Pintlar, for the officers and directors of Gulf and its subsidiaries.

On January 27, 1994, Gulf brought an adversary proceeding against, among others, certain of its former officers and directors (the "former officers and directors")[1]. *See Gulf v. USA Corporation v. David J. Rowland, et al,* Adv. No. 94–6010 (the "Adversary Proceeding").

On April 8, 1994, the Insurers commenced an action against the former officers and directors seeking a declaratory judgment that the insurance policies do not afford the former officers and directors any coverage in the adversary proceeding. *See Fidelity and Casualty Company of New York v. David J. Rowland,* Court of Chancery of the State of Delaware in and for New Castle County, Civil No. 13443 (the "Declaratory Action").

On July 26, 1994, the debtors commenced this action seeking to enjoin the Insurers from further prosecution of the Declaratory Action. The debtors contend the Insurance Policies, and the rights granted pursuant thereto are property of the debtors' estates and therefore, the Declaratory Action is a violation of the 362 automatic stay.

## II.

### THE INSURANCE POLICIES

Both insurance policies provide liability coverage to the officers and directors of Gulf

Lacey, F. Aley Allan, Warran H. Haber, David Kirch, Lawrence R. Mehl, John W. Herring and Anthony Walters.

and its subsidiaries. In addition both policies provide coverage to Gulf and its subsidiaries should they be required to indemnify their officers and directors.

Exclusion 4(I) of the 1989–1990 Continental Policy as amended by Endorsement No. 4., provides as follows:

THE COMPANY SHALL NOT BE LIABLE TO MAKE ANY PAYMENT IN CONNECTION WITH ANY CLAIM MADE AGAINST THE DIRECTORS AND OFFICERS:

BROUGHT AGAINST ONE OR MORE PAST, PRESENT OR FUTURE DIRECTORS AND OFFICERS, BY THE CORPORATION, ITS SUBSIDIARIES OR SUCCESSORS OR BY ONE OR MORE PAST, PRESENT OR FUTURE DIRECTORS AND OFFICERS INCLUDING THEIR ESTATES, BENEFICIARIES, HEIRS, LEGAL REPRESENTATIVES, ASSIGNS, OR ANY AFFILIATE OF THE CORPORATION, OR BY ANY SECURITY HOLDER OF THE CORPORATION WHETHER DIRECTLY OR DERIVATIVELY EXCEPT WHERE SUCH SECURITY HOLDER BRINGING SUCH CLAIM IS ACTING TOTALLY INDEPENDENTLY OF, AND TOTALLY WITHOUT THE SOLICITATION OF, OR ASSISTANCE OF, OR PARTICIPATION OF, OR INTERVENTION OF, ANY DIRECTOR OR OFFICER OF THE CORPORATION OR ANY AFFILIATE OF THE CORPORATION.

Exclusion 10 of the 1992–1994 Fidelity Policy, as amended by Endorsement No. 3, provides:

THE UNDERWRITER SHALL NOT BE LIABLE TO MAKE ANY PAYMENT FOR LOSS IN CONNECTION WITH ANY CLAIM MADE AGAINST ANY OF THE INSURED DIRECTORS AND OFFICERS:

BY OR ON BEHALF OF THE COMPANY AND/OR ONE OR MORE INSURED DIRECTORS AND OFFICERS INCLUDING THEIR ESTATE, BENEFICIARIES, HEIRS, LEGAL REPRESENTATIVES, TRUSTEES, ASSIGNS, OR ANY AFFILIATE, OR ANY SECU-

RITY HOLDER OF THE COMPANY WHETHER DIRECTLY OR DERIVATIVELY, EXCEPT WHERE SUCH SECURITY HOLDER BRINGING SUCH CLAIM IS ACTING TOTALLY INDEPENDENT OF, AND TOTALLY WITHOUT THE SOLICITATION OF, OR ASSISTANCE OF, OR PARTICIPATION OF, OR INTERVENTION OF ANY INSURED DIRECTORS OR OFFICERS, THE COMPANY, OR ANY AFFILIATE.

Pursuant to the above exclusions, the Insurers seek declaratory judgment that:

1. No coverage is afforded under the 1989 to 1990 Continental Policy, pursuant to Endorsement No. 4, for any liability and loss, including defense costs, incurred in the DIP Lawsuit [the Adversary Proceeding] by the defendant directors and officers;

2. No coverage is afforded under the 1992 to 1994 Fidelity Policy, pursuant to Endorsement No. 3, for any liability and loss, including defense costs, incurred in the DIP lawsuit by the defendant directors and officers.

### III.

*DISCUSSION*

■ Bankruptcy Code section 362 provides in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor **or against property of the estate,** of a

judgment obtained before the commencement of the case under this title;

(3) **any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.**

11 U.S.C. §§ 362(a)(1), (2) and (3) (emphasis added).

■ The debtors contend the automatic stay bars the Declaratory Action filed by the Insurers against the former officers and directors. However:

The automatic stay imposed under § 362(a)(1) is generally available only to the bankrupt and not to non-debtor third parties or codefendants. *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.), *cert. denied,* 479 U.S. 876 [107 S.Ct. 251, 93 L.Ed.2d 177] (1986); *Wedgeworth v. [Fibreboard] Corp.,* 706 F.2d 541, 544 (5th Cir.1983) [citation omitted]. Indeed, the protections afforded by the Bankruptcy Act's automatic stay have never been construed as staying as a matter of course all actions touching upon the debtor.

*Duval v. Gleason,* CCH Fed Sec.L.Rep. ¶ 95,694, CCH Bankr.L.Rep. ¶ 73,721, 1990 WL 261364 * 2 (N.D.Cal.1990).

The Insurers contend the Declaratory Action is merely an action against third parties, and therefore is not subject to the automatic stay. The debtors respond that although the automatic stay does not generally protect third parties it does protect property of the estate (*see* 11 U.S.C. §§ 362(a)(2) and (3)) and the insurance policies at issue in the Declaratory Action are property of the estate.

■ Generally, insurance policies issued to a debtor are property of the estate under Code section 541(a).[2] *Minoco Group of Companies, Ltd. v. First State Underwriters Agency of New England Reinsurance Corporation (In re Minoco Group of Companies, Ltd.),* 799 F.2d 517, 519 (9th Cir.1986); *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1001 (4th Cir.1986) ("Under the great weight of authority" insurance contracts have been held to be property of the estate.) In, *Minoco,* First State Underwriters Agency asserted that·insurance policies covering excess officers and directors liability were not property of the corporate debtor's estate on the grounds the policies benefited only the officers and directors and not the debtor corporation. The Ninth Circuit panel disagreed:

As the bankruptcy court found, the policies also benefit Minoco because the policies insure Minoco against indemnity claims made by officers and directors.

*In re Minoco,* 799 F.2d at 519. Based upon the conclusion that insurance policies issued to the debtor are property of the estate, the *Minoco* court held that cancellation of the debtors' insurance policy violated the automatic stay.

■ Here, as in *Minoco* the policies insure not only the former officers and directors, but also provide indemnity benefits to the debtors. Accordingly, the insurance policies at issue here are property of the estate.

The Insurers respond that although the insurance policies are property of the estate the proceeds of the policies are not. *Louisiana World Exposition, Inc. v. Federal Insurance Co. (In re Louisiana World Exposition, Inc.),* 832 F.2d 1391, 1401 (5th Cir.1987); *In re Daisy Systems Securities Litigation,*

---

2. Section 541 provides in relevant part:
   (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate.
   Such estate is comprised of all the following property, wherever located and by whomever held:
   (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
       *    *    *    *    *    *
   (6) Proceeds, product, offspring, rents, or profits of or from property of the estate,

except such as are earnings from services performed by an individual debtor after the commencement of the case.
   (7) Any interest in property that the estate acquires after the commencement of the case.
   (b) Property of the estate does not include—
   (1) any power that the debtor may exercise solely for the benefit of an entity of other than the debtor;
       *    *    *    *    *    *

11 U.S.C. § 541(a)(1), (6), and (7), (b)(1).

132 B.R. 752 (N.D.Cal.1991); *Duval v. Gleason,* CCH Bankr.L.Rep. ¶ 73721, CCH Fed. Sec.L.Rep. ¶ 95,694, 1990 WL 261364 * 4 (N.D.Cal. Oct. 19, 1990). A review of these cases is appropriate.

In *In re Louisiana World Exposition, Inc., supra,* the bankruptcy court granted the Contractor Creditors' Committee (a committee formed in accordance with Code section 1102(a)) permission to sue various directors, officers, managers and insurers of Louisiana World Exposition, Inc. ("LWE") in the name of and on behalf of LWE. The creditors committee filed an action in district court against LWE's officers and directors charging them with malfeasance and mismanagement (the "mismanagement action"). After the mismanagement action had been pending for some time the committee filed an adversary proceeding, pursuant to Code section 362, in the bankruptcy court seeking an injunction prohibiting LWE's insurers from making any further payment to the defendant officers and directors and their attorneys for legal fees incurred in defending the mismanagement action. The committee contended that the liability policy proceeds were part of the bankruptcy estate and therefore subject to the automatic stay. Federal Insurance Co. contended that while the insurance policy belonged the estate, insurance benefits payable to the officers and directors were not property of the estate. *In re Louisiana World Exposition,* 832 F.2d at 1393–94.

The bankruptcy court dismissed the adversary complaint and the creditors committee appealed. *In re Louisiana World Exposition,* 832 F.2d at 1394.

The Fifth Circuit Court of Appeals panel began by noting that insurance policies providing liability coverage for a debtor are property of the estate. *In re Louisiana World Exposition, Inc.,* 832 F.2d at 1399 (citing *In re Minoco* and *A.H. Robins v. Piccinin* ). However, the Fifth Circuit distinguished these cases as follows:

> The question is not who owns the policies, but who owns the liability proceeds. Although the answer to the first question quite often supplies the answer to the second, this is not always so, as we will ex-plain. The policies in several of these cases provided coverage for judgments against or losses of the bankrupt corporation itself. [citations omitted] In such cases, the estate owns not only the policies, but also the proceeds designated to cover corporate losses or liability. [citations omitted] That is different from the liability coverage here, which does not cover the liability exposure of the corporation at all, but only of its directors and officers and is payable only to them.

The Court of Appeals concluded the benefits available to the directors and officers of LWE were not part of the LWE estate.

Two California district court opinions also recognize this distinction between ownership of the insurance policy and ownership of the proceeds thereof. In *In re Daisy Systems Securities Litigation,* 132 B.R. 752 (D.C.N.D.Cal.1991) the chapter 11 trustee sought to prevent transfer of the proceeds from three officer and director liability policies purchased by Daisy Systems Corporation ("Daisy") to the plaintiffs in a securities fraud action and related shareholder derivative action against Daisy's officers and directors on the grounds the proceeds were property of the estate. The district court acknowledged that the policies belonged to the estate, but held, in accordance with *In re Louisiana World Exposition,* the proceeds of the policies were not assets of the estate and should therefore be divided among creditors according to non bankruptcy law. *In re Daisy Systems Litigation,* 132 B.R. at 755.

In *Duval v. Gleason,* CCH Bankr.L.Rep. ¶ 73721, CCH Fed.Sec.L.Rep. ¶ 95,694, 1990 WL 261364 * 4 (N.D.Cal. Oct. 19, 1990) various parties brought a securities action against a corporation and its directors. The corporation filed a voluntary chapter 11 petition. The directors argued the automatic stay should bar further suit against them, since the action could result in claims for indemnification against the corporation's directors and officers' liability policy. The court held that although the policy itself was property of the estate, the proceeds of the policy were not. Accordingly, since the litigation could effect only the proceeds, not the

policy itself, the litigation was not affected by the automatic stay.

Not all courts have recognized this distinction between the insurance policy and its proceeds. *See A.H. Robins v. Piccinin; Tringali v. Hathaway Machinery Company,* 796 F.2d 553, 560 (1st Cir.1986) ("proceeds of a liability insurance policy are 'property of the estate.'"). These cases also deserve a review.

In *A.H. Robins v. Piccinin,* the debtor was the owner of all patent and marketing rights to the Dalkon Shield. Under financial pressure from the avalanche of suits filed against A.H. Robins and various co-defendants seeking compensation for injuries suffered from use of the device, A.H. Robins filed a voluntary petition for relief under chapter 11.

Numerous plaintiffs in sought to sever their actions against the debtor so that they might proceed against co-defendants. The A.H. Robins responded by filing an adversary proceeding requesting declaratory relief to the effect that: (1) the debtor's products liability policy was property of the estate and (2) restraining the prosecution of actions against co-debtors.

The district court concluded because the insurance policy belonged to the estate, all actions for damages which might be satisfied from the proceeds of the debtor's products liability insurance policy, whether brought against the debtor or against third parties, were subject to the automatic stay. *A.H. Robins v. Piccinin,* 788 F.2d at 998. In affirming the district court the Fourth Circuit Court of Appeals held:

> A products liability policy of the debtor ... is a valuable property of a debtor, particularly if the debtor is confronted with substantial liability claims within the coverage of the policy in which case the policy may well be ... "the most important asset of [*i.e.,* the debtor's] estate," [citation omitted]. Any action in which the judgment may diminish this "important asset" is unquestionably subject to a stay under the subsection. [citation omitted] Accordingly actions "related to" the bankruptcy proceedings against the insurer or against officers or employees of the debtor who may be entitled to indemnification under

> such policy or who qualify as additional insured are to be stayed under section 362(a)(3). [citation omitted].

*A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d at 1001–1002.

The *Louisiana Exposition* panel recognized its decision was in conflict with the Fourth Circuit's decision in *A.H. Robins* as well as the district court decision in *Johns–Manville Corp. v. Asbestos Litigation Group (In re Johns Manville–Corp.),* 40 B.R. 219 (S.D.New York 1984). The Fifth Circuit distinguished these cases as follows:

> Here, the suit calling the liability coverage into play is one brought by the Committee on behalf of the debtor, LWE. The object of that action is to enlarge the debtor's estate. In the cited cases where the directors' and officers' liability coverage was at issue, the situation was just the opposite. For example, the plaintiffs in the Johns–Manville and A.H. Robins litigations were injured persons seeking recovery for themselves. The plaintiffs were not suing for the debtor's benefit. The courts *stayed* the third party actions against the directors and officers in part because of the likelihood that their liability coverage would be exhausted. They would then turn to the bankrupt corporation for their statutory right to indemnification, and at that point an asset of the estate—the indemnification proceeds—would be threatened. As one case put it, "to the extent expenditures ... exhaust those [liability] limits, an asset of the estate is diminished." *In re Johns–Manville [Corp.],* 26 B.R. [420] at 429 [ (Bankr. S.D.N.Y. 1983) ]. The question before those courts was, should the third-party suits *against* the debtor and its directors and officers be stayed. The courts answered yes, partly because they considered the indemnification proceeds threatened.

> Here, any payment under the liability coverage reduces the amount of the potential indemnification claim to the same extent that the policy amounts available for indemnification are thus reduced. There is not the potential for increasing the estate's

exposure by payment of the liability proceeds due.

*In re Louisiana World Exposition,* 832 F.2d at 1400.

█ This distinction made by the Fifth Circuit Court of Appeals is persuasive and appropriate. Thus, where an insurance policy provides direct coverage benefits to third parties, and the payment of such benefits does not reduce the amount of coverage available to the debtor, such benefits are not part of the estate. However, where paying such benefits increases the debtors' liability exposure, such benefits would be part of the estate.[3]

The declaratory judgment action at issue, unlike *Louisiana Exposition,* and *A.H. Robins,* is not an action which might result in the payment of insurance proceeds to third parties. Rather, the Insurers are attempting to obtain an order interpreting a policy exclusion. Thus, it appears the declaratory action is a action against the policy itself rather than an action for the proceeds.

If the Insurers obtain relief in the Declaratory Action, the estate will be adversely affected in two respects. First, if the former officers and directors are denied coverage, the debtor will have greater difficulty collecting damages from them. Second, there is a substantial likelihood the adversary proceeding will result in an obligation on the part of the debtors to indemnify the former officers

and directors for at least some of their legal expenses resulting from the adversary proceeding.[4] If the Insurers are successful in their declaratory judgment action, the action would have a *res judicata* effect on the debtors' claim of insurance coverage for such indemnity.

In *In re Minoco,* the 9th Circuit Court of Appeals held an insurance policy is property of the estate if, "the estate is worth more with the policy than without it." *In re Minoco,* 799 F.2d at 519. Here the estate is worth more with the disputed coverage than without it. Accordingly, the insurance coverage is property of the estate and the automatic stay prevents the filing of any action to limit the extent of such coverage.

█ In the alternative, the Insurers cite *Federal Trade Comm'n v. Evans Products Co.,* 775 F.2d 1084 (9th Cir.1985) and *Otero Mill, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),* 25 B.R. 1018 (D.C.N.M. 1982) contending even if the automatic stay applies to the declaratory action the debtors cannot obtain relief without a showing the action will result in irreparable harm to the debtors. However, neither case involved injunctive relief under Code section 362(a). *In re Otero Mills Inc.* was brought pursuant to Code section 105(a). *Evans Products Co.* was brought pursuant to 15 U.S.C. § 53.

In contrast the *Minoco* court held, "[t]he automatic stay comes into play upon the fil-

---

3. Both *Daisy* and *Duval* cite *In re Louisiana World Exposition,* as authority for their decision to allow the third party proceedings to go forward. However, according to the *Louisiana World* court's analysis both cases are more like *A.H. Robins* and *Johns–Manville* in that the third parties insurance proceeds which will ultimately reduce the amount of coverage available to the estate. Thus, although at first glance, the Fifth Circuit case and the California cases appear to all rely on the same reasoning, *i.e.* proceeds payable to third parties are not part of the estate, unlike the California court decisions the crux of the *Louisiana* decision is not whether the proceeds are payable to the debtor, but whether payment of the proceeds would adversely affect the amount of proceeds available to the debtor. The California cases, on the other hand hold that proceeds directly payable to third parties are never property of the estate.

4. Del.Code Ann.Title 8, § 145 (1993) provides: "To the extent that a director, officer, employee

or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defence of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith."

Indemnification under Delaware Code section 145 is mandatory. *Green v. Westcap Corp. of Delaware,* 492 A.2d 260, 265 (Del.Super Ct.1985). Further, "[c]laimants are ... entitled to partial indemnification if successful on a count of an indictment ... even if unsuccessful on another related count." *Merritt–Chapman & Scott Corp. v. Wolfson,* 321 A.2d 138, 141 (Del.Super.Ct.1974). The mandatory indemnity for successful defense of a single count rule applies to civil as well as criminal cases. *MCI Telecommunications Corp. v. Wanzer,* 1990 WL 91100 (Del.Super.Ct.1990).

ing of a bankruptcy petition whether or not the debtor would suffer irreparable harm...." *Id.*, 799 F.2d at 520. Accordingly, a showing of irreparable harm is not required before enjoining violations of the automatic stay.

The debtors' motion for a preliminary stay enjoining further prosecution of the declaratory action will be granted. Counsel for the debtors may prepare an appropriate form of order.