**In re John Edward HOFFPAUIR, and Dian Louise Hoffpauir, Debtors.**

**No. 99–01993.**

United States Bankruptcy Court, D. Idaho.

Jan. 12, 2001.

Randal J. French, Bauer & French, Boise, Idaho, for Debtors.

Jed W. Manwaring, Evans, Keane, LLP, Boise, Idaho, for Lois K. Murphy, Chapter 7 Trustee.

Gary L. McClendon, Boise, Idaho, Office of the United States Trustee.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Bankruptcy Judge.

### INTRODUCTION

This decision addresses some of the issues which have arisen between chapter 7 debtors and their trustee over the ability to exempt the proceeds of a fire insurance policy which provided for replacement value coverage of certain personal property. This decision follows an earlier ruling of the Court. *See*, "Memorandum of Decision and Order" filed June 21, 2000 (Doc. No. 37). As the relevant facts are set forth at length in that decision, and are incorporated here by this reference, they will be only briefly restated in order to provide convenient context for purposes of the present rulings.

### BACKGROUND AND FACTS

On August 5, 1999 John and Dian Hoffpauir ("Debtors") filed a chapter 7 petition, and their schedules and statement of financial affairs. On schedules A and D, Debtors listed a residence in Boise, Idaho with a market value of $175,000 and securing a claim in the amount of $151,800. On schedule B, they listed household goods and furnishings with a total value of $2,905. This category and amount included a computer valued at $500.

On schedule C, Debtors claimed a homestead exemption and personal property exemptions including the household goods for $2,905.00 under Idaho Code § 11–605(1)(a), and an $800 exemption to protect the excess value of a vehicle pursuant to § 11–605(10). No exemption was claimed for any tools of the trade under § 11–605(3). No timely objection was raised to these claimed exemptions.

On November 18, 1999 a fire caused significant damage to the residence and destroyed virtually all the personal property contents. Debtors made a claim under their homeowners' insurance policy with

Farmer's Insurance Group. This policy provided for "replacement cost" contents coverage.

On December 10, 1999 Debtors amended their schedules B and C. Amended schedule B increased the declared value of the household goods and furnishings from $2,905 to $108,000. Debtors also included a new entry on this schedule for "office equipment" (a computer and printer) with a value of $4,000. Amended schedule C claimed, in addition to the homestead, a $10,000 exemption in household goods and furnishings, and a $3,000 exemption for a computer, printer and scanner. On January 7, 2000 the Trustee filed a timely objection to these exemptions.

On January 12, Debtors again amended their schedules. Schedule B now listed $125 in dishes, cups, glasses, pots, pans and cooking utensils, and $103,000 in insurance proceeds for household goods and furnishings. This amended schedule B also listed $10,000 in insurance proceeds for a computer, printer, scanner and software. On their second amended schedule C, Debtors now claimed a $10,000 exemption in personal property [1] pursuant to "IC 11–605", with an additional $800 wild card exemption for additional household goods pursuant to § 11–605(10), and a $3,000 exemption in computer equipment as a tool of the trade. On January 25, the Trustee again timely objected to the exemptions.

This objection came on for hearing on April 18, 2000. At that hearing, the parties stipulated to delay submission of the Trustee's objection to Debtors' amended homestead exemption in the real property until all outstanding issues were clarified with the insurer under that aspect of the policy. The Court was asked to resolve only the objection to the amended exemptions claimed on Debtors' personal property and the insurance proceeds.

After consideration of all arguments and briefing, the Court on June 21 issued a preliminary decision which required the parties, including the U.S. Trustee ("UST") who had appeared in support of the Trustee, to return for further evidentiary hearing. This was based on the significant discrepancy between Debtors' itemization and valuation of property on their schedules and their later representations to their insurance carrier. The Court concluded that a threshold issue was presented as to whether the amendments were made in good faith and should be allowed under Fed.R.Bankr.P. 1009 and applicable precedent.[2]

At hearing on September 21, the parties presented further evidence regarding these matters. Upon that supplementation of the record, the Court took under advisement the issue of whether the proposed amendments were offered in good faith, and again took under advisement the issues regarding the propriety of all claimed personal property exemptions under state law.[3]

This decision constitutes the Court's findings and conclusions on the matter. Fed.R.Bankr.P. 9014, 7052.

## ARGUMENT

The Court must first decide whether Debtors should be allowed to amend their exemption claims. Assuming amendment is proper, and the Court thus reaches the question of allowance of the exemptions

---

1. This amount represents the sum of Debtors' claimed exemptions of $9,775 of the insurance proceeds for their household goods and furnishings, the dishes (etc.) of $125, and wearing apparel of $100.

2. Shortly after that ruling, the Panel spoke further on the requirement of good faith when proposing exemption amendments. *Arnold v. Gill (In re Arnold)*, 252 B.R. 778 (9th Cir. BAP 2000).

3. The parties agree that proceeds have been received well in excess of the amounts claimed exempt, and there are yet more left at issue with the insurer. Thus, the estate will have a significant recovery even if the Debtors' contentions as to allowable exemptions are sustained.

claimed, the litigants urge the following positions.

Debtors argue that, following the post-petition fire loss of their home and its contents, they are entitled to claim exempt $13,800 of the insurance proceeds as above set forth. They rely in large part upon the established principle of liberality in construction of exemption statutes, and upon what they perceive to be the intent of the Idaho Legislature reflected in Idaho Code § 11–606.

The Trustee, admitting that no objection was raised to the original exemption claimed of $2,905 in household goods, concedes an exemption under § 11–606 of an identical amount of insurance proceeds covering those assets. But she asserts that Debtors aren't entitled to increase the exemption beyond this fair market value of the personal property as of the date of filing, even though Debtors carried replacement cost insurance coverage. Her view is based on a narrower reading of § 11–606 coupled with a belief that Debtors should be held to their earlier valuation of their personal property assets, a valuation Mr. Hoffpauir reaffirmed at hearing as still accurate up to the day of the fire. She also believes that § 541 captures for the benefit of creditors any intangible rights that ripen post-petition, and contends that exemption through amendment is improper in regard to such property.

The UST holds a similar view. But it also specifically argues that, under prevailing case law, "post-petition appreciation" in asset value belongs to the estate. The UST contends that the insurance proceeds fall within this category, and they cannot be claimed as exempt. In the UST's view,

Debtors are entitled to no part of the insurance proceeds whatsoever.[4]

## DISCUSSION

### I. The ability of Debtors to amend their exemption schedules

▄▄▄ *Arnold* reaffirmed the proposition, discussed in the Court's June 21 decision, that exemption amendments are to be liberally allowed absent a showing of bad faith or prejudice. 252 B.R. at 784.[5] *Accord, Martinson v. Michael (In re Michael),* 163 F.3d 526, 529 (9th Cir.1998). Bad faith must be evaluated on the entirety of the evidence, and generally involves consideration of whether debtors have attempted to conceal assets. *Id.* at 785–86. The mere fact that allowance of the amendment would remove assets from administration is, standing alone, insufficient to establish prejudice. *Id.* at 787–88.

▄▄▄ The amendments clearly raised the specter of possible bad faith. The submission by Debtors to their insurance carrier, Exhibit 1, set forth a "date of purchase" and an "original cost" of hundreds of assets on an item by item basis. In all cases, this asserted "original cost" was far in excess of the values Debtors set out on their signed and sworn bankruptcy schedules for the same assets, even for assets the exhibit shows as acquired within a year or two of filing.

However, the testimony of Mr. Hoffpauir during the September 21 hearing established that these entries on Exhibit 1 were not truly disclosures of acquisition costs for the assets, nor even Debtors' estimates of their value as of the date of fire. Rather, the "original cost" category contained estimates of probable or anticipated replacement costs given Debtors' post-fire investigation.

---

4. The "United States Trustee's Points, Authorities, and Argument" filed April 28, 2000 ("UST Brief") did not oppose a $2,905 exemption. The more draconian view was rather reluctantly conceded at the September hearing to be a consequence of the other arguments advanced.

5. The Panel considered, but declined to resolve, the question of whether the bad faith or prejudice must be established by a preponderance of the evidence or by clear and convincing evidence. The Panel's discussion would tend to indicate that the preponderance standard should apply. *Id.* at 784, n. 10, and this Court has applied that standard.

The "replacement cost" category on Exhibit 1 was a similar misnomer. This column was used by Debtors only to indicate the actual amount spent when the item was replaced, not its projected replacement cost.

Mr. Hoffpauir testified that the in-place fair market values of the assets at the time of the fire were identical to the values that were set forth on the original bankruptcy schedules. His testimony was credible as to Debtors' good faith belief in those values. So, too, was his explanation for the apparent discrepancies regarding values on Exhibit 1 arising from the misuse of the terminology.

Less persuasive was Debtors' explanation for wholly omitting from the schedules assets they were able to itemize on Exhibit 1. Debtors contend that the admitted errors on the schedules arose partially through "oversight," partially through sloppy description, partially through slipshod completion of the schedules, and partially through a misunderstanding of what needed to be disclosed.[6] The Court finds that a cavalier approach was taken to the serious duties of complete and accurate disclosure and scheduling of property.

While not favorably disposed to such arguments, the Court nevertheless concludes that the amendment should not be barred on the grounds of bad faith. The concern that Exhibit 1 reflected knowledge of Debtors that their scheduling of assets was grossly misleading, and may have reflected an intent to conceal assets, has been assuaged by the explanation for Debtors' inartful use of the terms "original cost" and "replacement cost" in that document. Additionally, the statutory caps on the amount of property which may be exempted, and the inclusion in the estate of all the "omitted" assets which now are shown on Exhibit 1, ensure that creditors

will receive the bulk of the insurance recovery. It appears no prejudice will result. The Court finds that the conduct of Debtors is, under all the evidence, not of such a degree or nature that the ability to amend should be foreclosed on the grounds of bad faith.

The Court concludes that the standard of *Arnold* has been met, and the amendments are allowable.

## II. The propriety of Debtors' exemptions

The focus now turns to the specific exemptions in the insurance proceeds which have been asserted, and the objections and defenses raised thereto.

### A. The general exemption principles that apply

Idaho law provides the applicable exemptions in bankruptcy cases. *See,* § 522(b); Idaho Code § 11–609. Idaho's statutory exemption provisions are to be liberally construed in order to protect debtors and their fresh start. *In re DeBoer,* 99.3 I.B.C.R. 101, 102 (Bankr.D.Idaho 1999). The objecting party has the burden of proving that the exemptions are not properly claimed. Fed.R.Bankr.P. 4003(c).

### B. Exemption of insurance proceeds

Debtors initially claimed exemptions of tangible personal property, and also did so in their first amendments after the fire, even though those assets no longer existed. That the exemption needed to be asserted against the insurance proceeds was, it appears, an evolving awareness, as reflected by the language used in Debtors' later *seriatim* amendments.

Debtors' last amendment asserts a claim to $9,775 of insurance proceeds for destroyed household goods,[7] a claim to $800

---

6. In this last regard, for example, Mr. Hoffpauir said Debtors thought they could omit listing secured assets if they were pledged as collateral (though they did not consistently apply this approach) and also thought they

could omit assets either owned by or "promised" to their children.

7. The amended exemption claimed for $225 in wearing apparel and dishes, pots and pans

in additional proceeds for lost personalty under the wild card exemption, and a claim to $3,000 of the proceeds for replacement of the computer equipment, which Debtors contend was a tool of the trade. Each claim is based upon § 11–606.[8]

### 1. Characterization of the insurance policy, and proceeds, as property of the estate

■ The destroyed personal property was property of the estate. So, too, was the casualty insurance policy itself. § 541(a)(1). *See also, Pintlar v. Fidelity & Casualty Company of New York (In re Pintlar Corporation)*, 175 B.R. 379, 382, 94 I.B.C.R. 245, 247 (Bankr.D.Idaho 1994), rev'd on other grounds, 124 F.3d 1310 (9th Cir.1997); *In re Spaulding Composites Company, Inc.*, 207 B.R. 899, 906 (9th Cir. BAP 1997). The proceeds of that policy also qualify as property of the estate. *See* § 541(a)(6) (property of the estate includes proceeds, product, offspring, rents and/or profits of or from property of the estate). *See also, Pintlar*, 175 B.R. at 382–85, 94 I.B.C.R. at 248–50;[9] *Lemos v. Rakozy (In re Lemos)*, 99.4 I.B.C.R. 181, 183 (Bankr.D.Idaho 1999) (§ 541 captures contingent rights that ripen post-bankruptcy).

The UST argues that Debtors failed to claim an exemption in the insurance policy itself, and thus cannot claim the proceeds thereof now that rights under the policy have ripened. *See* UST Brief, at 4–5. This makes little sense to the Court. The suggested approach would encourage a speculative exemption, and force every debtor holding a casualty insurance policy to assert something in the nature of a "contingent exemption" in the proceeds of that policy simply to cover the possibility of a post-petition loss.[10]

### a. Characterization of the insurance proceeds as "appreciation" in value of the destroyed assets?

■ The UST also argues that the insurance proceeds reflect an "appreciation" in property of the estate existing on the date of filing which cannot properly be exempted. The Court concludes that this argument is also misplaced.

The UST's authorities regarding post-petition appreciation have been reviewed in detail, and they indeed establish what the UST contends. For example, *Vu v. Kendall (In re Vu)*, 245 B.R. 644 (9th Cir. BAP 2000) states that "The Ninth Circuit has consistently held without limitation that, under § 541(a)(6), the estate is entitled to post-petition appreciation." *Id.* at 647–48.[11]

---

will be allowed. The same sort of items existed and were claimed at filing, and the Trustee and UST have not assailed these claims.

**8.** Debtors' "clarification" that they relied on § 11–606 also arose later in the process, as discussed in the June 21 decision at p. 6, n. 2.

**9.** This Court's lengthy discussion in *Pintlar* was driven by the fact that the policies there provided liability coverage and benefits to parties other than the debtor. However, applying the rationale of *Pintlar* to the present situation would still lead to the conclusion that the casualty proceeds are property of the estate.

**10.** Additionally, § 522(g) acknowledges that when a trustee recovers property under (*inter alia*) § 542 or § 543, the debtor may exempt such property in the absence of prior voluntary transfer or concealment. *See, e.g., In re Adams*, 92 I.B.C.R. 47, 48 (Bankr.D.Idaho 1992). To the extent the Trustee seeks the

carrier to deliver up the proceeds, it appears that these "turnover" provisions are implicated and § 522(g) provides Debtors a right to assert an exemption to the proceeds. *See also, In re Notargiacomo*, 253 B.R. 112, 114 (Bankr.S.D.Fla.2000) (property of the estate added after the commencement of the case may be claimed as exempt; § 522(b) contains no time bar).

**11.** The Court notes, however, that at least one of the authorities relied upon by the Panel in *Vu* cuts against the UST's position, and supports the idea that a debtor still retains the right to assert an exemption against such "appreciated" value. *See,* 245 B.R. at 647, n. 6, citing *Potter v. Drewes (In re Potter)*, 228 B.R. 422 (8th Cir. BAP 1999). The Court in *Potter* stated that *"[e]xcept to the extent of the debtor's potential exemption rights,* post-petition appreciation in the value of property accrues for the benefit of the trustee." 228 B.R. at 424 (emphasis supplied).

However none of the UST's authorities on the subject of appreciation deal with the question of casualty insurance proceeds. As such, the cases relied upon are not persuasive support for the proposition that such insurance proceeds should be characterized as an "appreciation" in the value of the assets which no longer even exist.

█ That the proceeds "replace" the lost asset, or that they can otherwise be viewed as a form of increase in the value of the asset (*i.e.*, "appreciation") is far from clear. The insurance policy is a contract, and the proceeds are a contractual benefit payable upon loss in return for premiums earlier paid. This money is a recovery of or a realization on that contract right. The money is not a substitute for the goods. *See, In re Simpson,* 238 B.R. 776, 779 (Bankr.S.D.Ill.1999) (right to insurance proceeds derives not from the property itself but from a contract of indemnity between debtor and insurer; proceeds are paid not as the equivalent of the property but, rather, under the agreement to indemnify against loss).[12]

The question thus becomes what exemption rights exist under Idaho law in the fruits of the ripened contract, the insurance proceeds?

### 2. Interpretation of § 11–606

█ Section 11–606 expressly grants an individual a right to "an exemption of proceeds" when property is lost, damaged or destroyed and the owner has been indemnified therefore. That provision states:

(1) *If property, or a part thereof, that could have been claimed as exempt, such as,* a burial plot under subsection (1) of § 11–603, Idaho Code, a health aid under subsection (2) of § 11–603, Idaho Code, or *personal property subject to a value limitation under paragraph (a) or (b) of subsection (1) or subsection (3) of § 11–605, Idaho Code,* has been taken

by condemnation, or *has been lost, damaged, or destroyed, and the owner has been indemnified therefore, the individual is entitled to an exemption of proceeds that are traceable for three (3) months after the proceeds are received.* The exemption of proceeds under this subsection does not entitle the individual to claim an aggregate exemption in excess of the value limitation otherwise allowable under § 11–605, Idaho Code.

§ 11–606 (emphasis added).

The UST and the Trustee both read this statute in a narrow and limiting, though not identical, way. As the UST rather reluctantly acknowledged at hearing, it effectively sees the statute as applying only if the casualty loss is suffered prebankruptcy and only if an exemption in the proceeds is specifically declared under § 11–606 at filing. If a loss is suffered after bankruptcy, given the arguments of the UST discussed above, a debtor would be denied the protection of the statute.

The Trustee takes a slightly less harsh view. She concedes that Debtors are entitled to claim the insurance proceeds as exempt, but only to the extent of the amount of the exemption earlier claimed in the physical assets. She balks at allowing an increase in the exemption up to the statutory maximum. She would interpret the language capping the "aggregate exemption [at] the value limitation otherwise allowable under § 11–605" as meaning the value of the exemption which would have been allowable in the absence of any loss. Here, she contends, that value would be $2,905, which was the value of the personal property on the date of filing and on the day immediately before the fire.

Debtors simply view the limit of § 11–606 as setting a ceiling on the claim at the greater of the actual proceeds or the theoretical maximum available under § 11–605

---

12. *Payne v. Wood,* 775 F.2d 202, 204 (7th Cir.1985) speaks of the "fire turn[ing] physical assets of the estate into insurance pro-

ceeds." While for practical purposes the parties' focus might shift in this fashion, it is not a technically accurate observation.

and other applicable exemption provisions.[13]

The principles of liberal construction of exemption statutes in favor of debtors stands in opposition to the views of the statute expressed by the Trustee and UST. But this rule of construction is not the only impediment to their argument.

■■■■ Judicial interpretation of an Idaho statute begins with an examination of the statute's literal words. *Rule Sales and Service, Inc. v. U.S. Bank N.A.*, 133 Idaho 669, 672–73, 991 P.2d 857, 860–61 (Ct.App.1999). *See also, In re Skaar*, 98.1 I.B.C.R. 13, 14 (Bankr.D.Idaho 1998).[14] If the language is clear and unambiguous, it must be applied according to its plain, obvious and rational meaning, and it must be assumed that the Legislature meant what it said in the statute. *Id.*

■■■■ Here the Legislature said in § 11–606 the debtors could not "claim an aggregate exemption in excess of the value limitation otherwise allowable." It did not say that they were limited to "the exemption otherwise allowable." The Court concludes that the "value limitation" is a reference to the various relevant statutory maximums. Had the Legislature meant to cap the claim on insurance proceeds to the amount of the actual exemption which would have been available for the destroyed asset in the absence of loss, it could have so stated.

When insurance contracts pay benefits based on an actual market value of the destroyed assets at the time of loss (or a depreciated cost or similar methodology aimed at determining such market value), the result desired by the Trustee is achieved. The debtor's indemnification would be in the same amount as what could have been claimed as an exemption in the absence of loss.

But would the Legislature deny debtors the right to contract for a greater recovery? Would it, even where debtors contracted for replacement value, limit the available exemption to just the actual market value at the time of loss? If the statute were interpreted as the Trustee desires, all replacement value insurance contracts would, at least for exemption purposes, be converted into market value policies. No such intent clearly appears.

■■■ To the Court, § 11–606 adequately manifests an intent to protect Idaho citizens who suffer catastrophic loss. It serves the recognized dual functions of the exemption statutes: to protect debtors from the consequences of economic misfortune and to provide them the opportunity for a fresh start. *In re Hiddleson*, 97.1 I.B.C.R. 14 (Bankr.D.Idaho 1997), citing *In re Biancavilla*, 173 B.R. 930, 932, 94 I.B.C.R. 150, 151 (Bankr.D.Idaho 1994); *In re Moon*, 89 I.B.C.R. 151, 152 (Bankr.D.Idaho 1989). Nothing in the language or the function of the statute requires the interpretation suggested by the objectors.

■■■ Instead, I conclude that here, as in so many places in the Idaho statutes, the monetary caps on the exemptions are designed as the balancing point between the debtors' rights and creditors' interests, and serve to prevent abuse. *See, In re Punches*, 99.2 I.B.C.R. 67, 68 (Bankr.D.Idaho 1999), citing *In re Aguero*, 93 I.B.C.R. 65, 67 (Bankr.D.Idaho 1993).

---

13. The Court notes that Debtors have not argued that, by virtue of the lack of timely objection to their original schedule C which claimed all household goods as exempt, they are entitled to all the proceeds attributable to those assets. *See, e.g., In re Snow*, 21 B.R. 598, 601 (Bankr.E.D.Cal.1982). *See also, Matter of Rutherford*, 73 B.R. 665, 668 (Bankr. W.D.Mo.1986); *Lewis v. Thompson*, 28 B.R. 351, 354 (Bankr.M.D.Pa.1983).

14. This approach to state statutory construction mirrors the federal approach to construction of the Bankruptcy Code. *See, Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A. (In re Hen House Interstate Inc.)*, 530 U.S. 1, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000).

■ I also note that, while § 11–606 operates to allow debtors to claim an exemption in insurance proceeds traceable to their lost personalty, the largess of the Legislature is not without some limits. The proceeds must be traceable, the exemption is lost after three months[15] and the exemption is capped at the maximum amounts available under the other applicable provisions of the Idaho Code. This is sufficient control, and there is no need to engraft an interpretation on the statute essentially limiting the indemnification to market value regardless of the insurance contract's terms.

The result reached today is not inconsistent with the Court's consideration of § 11–606 in *Welker*. The Court there denied a § 11–605(3) vehicle exemption since, after that car was "totaled" prior to bankruptcy, there was no longer an asset to which that exemption could attach. Since the debtors failed to amend their schedule C to assert an exemption under § 11–606 to the insurance proceeds, and since the three month window of § 11–606 had expired, the debtors were foreclosed from asserting any further amendment. Here the loss occurred after the petition was filed, the amendment was then seasonably made, and the proceeds are traceable.[16]

Since § 11–606 has been found to be available to Debtors, the question next turns to the maximum value amount allowable under § 11–605 which is assertable against the proceeds by virtue of § 11–606.

### 3. Property exempt under § 11–605(1)

Section 11–605(1), as amended,[17] provides as follows:

(1) An individual is entitled to exemption of the following property to the extent of a value not exceeding five hundred dollars ($500) on any one (1) item of property and not to exceed a total value of five thousand dollars ($5,000) for all items exempted under this subsection:

(a) Household furnishings, household goods, and appliances held primarily for the personal, family, or household use of the individual or a dependent of the individual[.]

■ This Court previously held that the "stacking" of exemptions by joint debtors under the prior version of § 11–605(1) was improper, reasoning that "[t]he Idaho Legislature meant, by including the per household limitation, to avoid a double exemption in subsection (1) items where there was only one residence occupied by the joint debtors." *Hiddleson*, 97.1 I.B.C.R. at 14. However, due to elimination of the per household condition, such stacking now appears to be allowed, and

---

**15.** The Idaho Legislature actually decreased to 3 months the 18 month tracing period provided for in uniform legislation. *In re Welker*, 99.4 I.B.C.R. 161, n. 1 (Bankr.D.Idaho 1999).

**16.** It is true that, as in *Welker*, there here was an express schedule C claim of exemption in an asset which no longer existed and no express claim made under § 11–606. However, Debtors raised their arguments under § 11–606 before hearing, and asked the Court to "deem" the schedules amended accordingly. The objectors did not contest this request, and all the parties have argued and submitted the question of exemption under § 11–606. The Court believes the question fairly before it. Additionally, the Court has no evidentiary basis to conclude that Debtors' exemption was

claimed more than three months from receipt of the proceeds, which was another problem in *Welker*. In fact, the representations at the two hearings in the instant case indicated that, while some funds had been received, a significant amount remains to be collected from the carrier. Thus a § 11–606 claim could possibly be timely raised again when additional funds are recovered. The Court concludes that *Welker* is, in these regards, distinguishable.

**17.** The amendment to § 11–605(1) discussed here became effective on July 1, 1999, just prior to Debtors' August 1999 filing. It raised the aggregate value cap from $4,000 to $5,000, and removed language which limited that aggregate to a "per household" basis.

neither the Trustee nor UST have argued otherwise.[18]

■ In regard to the personal property lost in the fire, an amended exemption was claimed on insurance proceeds. These proceeds indemnified Debtors for the loss of that property, and the claim fits within the language of § 11–606. The amendment was made within the required three months of loss, and no issue is raised as to tracing. The amended exemption claim does not exceed the monetary limit of what is otherwise allowable to each of these joint Debtors under amended § 11–605(1)(a).

Accordingly, under the circumstances of this case and on the record presented, the Court will overrule the objections to the § 11–606/11–605(1)(a) exemption of $9,975.

### 4. Property exempt under § 11–605(10)

The Trustee has also objected to Debtors' claimed exemption pursuant to § 11–605(10) in the amount of $800. This section has been characterized as a "wild card" or "catch-all" exemption, and provides for an exemption of:

> (10) An individual's aggregate interest in any tangible personal property, not to exceed the value of eight hundred dollars ($800).

§ 11–605(10).[19]

■ This provision allows debtors to choose something to exempt, from otherwise non-exempt tangible physical property of any kind or nature, up to a maximum value of $800. This provides a modest additional exemption to supplement the other exemptions in personal property which are allowed by the Idaho Code. *Duman*, 00.3 I.B.C.R. at 137.

The same analysis applies under § 11–605(10) as under § 11–605(1), and the Trustee's objection will be overruled as to this $800 exemption.[20]

### 5. Property exempt under §§ 11–605(3)

Finally, the Trustee has objected to the amended exemption claimed by Debtors for the computer and printer. Debtors claim this equipment is used as a tool of each of their trades and is exempt under § 11–605(3), which states:

> (3) An individual is entitled to exemption, not exceeding one thousand five hundred dollars ($1,500) in aggregate value, of implements, professional books, and tools of the trade; and to an exemption of one (1) motor vehicle to the extent of a value not exceeding three thousand dollars ($3,000).

The Trustee correctly observes that this exemption was not claimed on the original schedule C. Instead Debtors simply included the computer among their household property, which is a perfectly acceptable exemption. *In re Cox*, 98.1 I.B.C.R. 24, 25 (Bankr.D.Idaho 1998). However, it provides no additional benefit for Debtors to continue to claim the computer as a household good because they already claimed the maximum exemption under § 11–605(1)(a) and § 11–606 on that score.

■ A computer system can under certain circumstances be claimed as exempt under § 11–605(3) as a tool of trade. *Biancavilla*, 173 B.R. at 933, 94 I.B.C.R. at 151–52. According to *Biancavilla*, "the

---

**18.** Whether or not removal of the per household language was intended to legislatively overrule *Hiddleson* and allow joint debtors to combine exemptions under this provision, a plain reading of the amended statute supports this construction.

**19.** The amendment requiring that the property be "tangible personal" property is not applicable to this case because it became effective on April 12, 2000. *In re Duman*, 00.3 I.B.C.R. 137 (Bankr.D.Idaho 2000).

**20.** In the amended schedule C, Debtors claimed an $800 wild card exemption in insurance proceeds for household goods and a separate $800 wild card exemption in a vehicle. The vehicle exemption was not contested.

mere fact that a debtor uses an item in the earning of his livelihood is not sufficient to allow an exemption of the item under Idaho Code § 11–605(3). The item must be necessary for the debtors' continued employment." *Id.* (citations omitted). As an alternative, the Court also recognized that "[w]here an employer expends money for the purpose of allowing an employee to work at home, those items actually used by the debtor to work at home may be considered tools of the trade." 173 B.R. at 933, 94 I.B.C.R. at 152. Thus the fact that Mr. Biancavilla's employer purchased and provided the software for him to work at home adequately supported the exemption. *Id.*

 The requisite use or provenance of the property must be established as of the date of the petition. 94 I.B.C.R. at 152; *see also, Wolf v. Salven (In re Wolf),* 248 B.R. 365, 367 (9th Cir. BAP 2000); *In re Kane,* 99.4 I.B.C.R. 175, 177 (Bankr.D.Idaho 1999).

■ Debtors have failed to meet the *Biancavilla* test. While Mr. Hoffpauir testified that he currently uses the computer equipment (which was replaced after the fire) in his business, the evidence did not establish that he was employed or used the computer equipment in any occupation at the time of the filing of the petition for relief.

Mrs. Hoffpauir was employed at the time of filing, working as the director of a community library. She used the home computer equipment to write and work on grant proposals. The evidence did not indicate she was required to work at home, or that she lacked access to computers at the library. The computer was not shown to be necessary for Mrs. Hoffpauir's continued employment as *Biancavilla* requires. Nor was there any indication that her employer furnished or helped to furnish the equipment or software.

Based on this record, the Court finds that Debtors have not established an allowable exemption for the computer equip-

ment as a tool of trade pursuant to § 11–605(3), and the objections in this regard will be sustained.

## CONCLUSION

The Trustee's objection to Debtors' amended claims of exemption of the insurance proceeds for household goods and furnishings under § 11–605(1)(a) is OVERRULED. The Debtors will be allowed a $9,975.00 exemption in insurance proceeds under §§ 11–605(1) and 11–606 and a further $800.00 exemption under §§ 11–605(10) and 11–606.

The Trustee's objection to Debtors' amended claim of exemption under § 11–605(3) is SUSTAINED.

Debtors' counsel shall submit an order in accord herewith.